State ex rel. Chouteau, et al. v. Leffingwell, et al.

STATE OF MISSOURI, *ex rel.*, CHOUTEAU, *et al.*, Relators, *vs.* H. W. LEFFINGWELL, *et al.*, Respondents.

1. *Corporations—Municipal purposes—Forest Park—Taxation, special and general.*—Under the provisions of the act to establish Forest Park, (Sess. Acts, 1872, p. 255) a district outside the city of St. Louis was incorporated. The commissioners created under it and having its exclusive management and control in no instance resided within its boundaries. Those owning lands within it were to be taxed for its establishment and support, against their consent, by persons having no interest in common with them. It was declared to be "for a municipal purpose of great importance to the city of St. Louis, conducive alike to the dignity and character of the city, and the recreation, health and enjoyment of its inhabitants." But the inhabitants of St. Louis were not to be taxed in anywise on account of it. *Held,* 1st. That the park was not established for "municipal purposes" within the meaning of § 4, Art. VIII, of the State Constitution; 2nd. That it authorizes a special tax for the purpose of a general public character; and that for these reasons the act was void.

### ON MOTION FOR RE-HEARING.

1. *Constitution—Corporations for municipal purposes—Meaning of term.*— A corporation, " for municipal purposes," as contemplated by §§ 4, 5, Art. VIII of the State Constitution, is either a municipality, such as a city or town, created expressly for local self-government with delegated legislative powers, or it may be a sub-division of the State for governmental purposes, such as a county, a school or road district, etc.; but it must embrace some of the functions of government, local or general; and no corporation not exclusively designed for this end can be properly denominated a municipal corporation.

2. *Constitution—Municipalities—Corporations, independent of.*—The Constitution did not contemplate that corporations, independent of a city government, should perform any of its functions.

3. *Revenue—Taxation—Street openings—Public Park.*—The doctrine which justifies special taxation against adjoining property holders for supposed benefits, as in the matter of street openings, has no application to public parks. A lot holder has a property interest, or easement, in the adjoining street, independent of the public parks. Not so, however, with lots fronting on public parks.

*T. T. Gantt,* for Relator.

I. The act establishing Forest Park is special, while its objects could have been accomplished by general law.

II. The act is in violation of §§ 4, 5, Art. VIII, of the State Constitution. Under these clauses, no corporation, except a city, can be erected by special legislation. A corpor-

ation for municipal purposes and a municipal corporation are the same thing. The terms are convertible. (Dil. Mun. Corp., Ch. 2, 9 ; Ang. & Ames' Corp., §§ 14, 15.) But Forest Park is not, in any proper sense, a municipal corporation. The essence of such a corporation is that there be inhabitants of a particular locality, who are incorporated for the purpose of local government. Nothing of the sort is shown in this act. Forest Park is not an appendage of the city of St. Louis. It is "in St. Louis county, west of the city of St. Louis."

III. This act authorizes the levy of a tax for the purposes of the proposed corporation outside of its limits. This cannot be done. (Wells vs. City of Weston, 22 Mo., 384.)

*Glover & Shepley*, for Relators.

I. The act creating the corporation of " The Commissioners of Forest Park," attempts to create a corporation which the act declares to be for a municipal purpose outside of the city of St. Louis, at the same time declaring that the municipal purpose is solely connected with the city of St. Louis. The park was, at the passage of the act, about, at its nearest point, one and a half miles from the western limits of the city of St. Louis. As far as any constitutional question is concerned, it might as well have been established at Glencoe, twenty miles from the city of St. Louis.

II. The act on its face declaring that it is the creation of a corporation for municipal purposes, and not being the incorporation of a city, is in violation of §§ 4 and 5, Art. VIII, of the constitution. It is clear from the context, that the municipal corporations allowed to be chartered by special law, were the same corporations and those only, which were excepted in the 4th clause, and which were more particularly pointed out and designated by the 5th section.

It is contended that the legislature can incorporate any corporation by special act, so that it is for a municipal purpose. It would be, on this theory, competent for the legislature to incorporate, by special act, a coal company, so that its object was, and was expressed to be, for the " municipal purpose " of

furnishing the city of St. Louis with cheap coal; or if a gas well was discovered outside of the city of St. Louis, by special act, to incorporate a company for the purpose of utilizing it for the advantage of the citizens of the city of St. Louis.

Such a proposition would enable any corporation to be created by the legislature, so that it was claimed to be for "municipal purpose," and every municipal purpose might be exercised by a separate corporation.

There is an express prohibition against the incorporation of any town under 5,000 permanent inhabitants, so that an incorporation of a town having only 4,500 people, would be void. But by the construction contended for, though such a legislative act would be void, it is entirely competent for the legislature, by special act, to incorporate persons to lay out, purchase and establish a park for the recreation and enjoyment of a town of 4,500 people, as that is "a municipal purpose of great importance to the town."

In Horton vs. Mobile School Commissioners, 43 Ala., 598, there was no constitutional prohibition to be construed. The word municipal, as used in the constitution, is construed by the constitution itself. If you change the words in the 4th and 5th sections from "municipal" to "banking,"—to "insurance,"—to "railroad," will any one say that there was a different sense in the 4th section, when it speaks of "banking purposes," &c., from that conveyed by the 5th section, when it speaks of banking corporations?

As to the incorporation of counties, which it is said, under our construction, there is no power in the legislature to institute, we reply that, the institution of counties is a political sub-division made by the State for the more convenient exercise of its sovereign power. It is not correctly a corporation, but a *quasi* corporation, as stated in Bush vs. Shipman, 4 Scammon, 190; Han. & St. Joe. R. Co. vs. Marion Co., 36 Mo., 294, also 555.

III. The statement in the third section of the Park act, that it is "impossible to make any provision by a general law to effect the desired object," does not relieve the act from the prohibition contained in the 27th section of the 4th Art.

1. This section has nothing to do with corporations. This is apparent from the context.

2. If the provision was so general in its character as to include corporations, then Art. VIII declares what corporations can be created by special laws.

3. It is patent from the Act, that provision could have been made for creating parks in cities by general law.

4. The recital in the Act, that no law of a general nature could be passed to affect the object (even if Art. VIII had not fixed the matter as to corporations), is not to be taken as conclusive, but the question is to be judicially determined.

IV. It is not in the power of the legislature to tax persons and property not in the limits of a municipal corporation, for an object which in the act is declared to be for the benefit and advantage of the municipal corporation and its residents. (See Wells vs. City of Weston, 22 Mo., 384.)

V. If for any reason, the power of taxation in the act fails, the act must fall with it, for it is vital to the act, and without it the whole purposes of the act fail.

*Sharp & Broadhead*, for Respondents.

I. The plain reading of sections 4 and 5, of Art. VIII, of the constitution is: That Corporations may be created for municipal purposes by special act; but no municipal corporations except cities having a population of over 5,000 permanent inhabitants shall be created by special act. Hence, a county—a school district—a State University,—and such like *quasi* corporations established for municipal purposes, may be invested with corporate powers by special act. Unless a county is a corporation created for municipal purposes, and not strictly a municipal corporation, it cannot be established by special act. There is no express power in the constitution to create a county, and yet it is clearly contemplated that it may be done; (See Art. IV, § 21) and no one has doubted or disputed the power to do so by special act.

We must distinguish between those organizations, having a

few functions of a corporate existence, and some of those of a municipal character ; and a municipal corporation proper. "This distinction is usually drawn between such corporations, as towns and cities voluntarily organized under incorporating acts, and involuntary *quasi* corporations such as counties." (Dillon on Municipal Corporations, p. 31, and note ; Hamilton county vs. Wright, 7 Ohio State R., p. 109–118.) There are certain actions to which counties are not liable at the suit of private individuals, and to which cities are. In the case of cities, the inhabitants are regarded as having been clothed with municipal powers at their request, and for their peculiar and special advantage, and hence, to a certain extent, they are liable as private corporations ; but not so in regard to counties, they are more peculiarly the agents of the State.

We must conclude then, that the term municipal corporation as used in the constitution, has a technical meaning, and that it is not synonymous with a corporation for municipal purposes. This was a wise distinction made by the framers of the constitution, and the language is used in the light of judicial decisions upon such questions.

That counties are corporations, see Bush vs. Shipman, 4 Scammon, 190 ; Bradley vs. Case, 3 Scammon, 603 ; see also, Hear vs. Curators of State University, 47 Mo., 225. As to the State University and its character as a public corporation, see also State *ex rel.* Police Commissioners vs. St. Louis County, 34 Mo., 570–572.

Municipal law is public law. (Bouvier's Law Dictionary, Tit. Municipal Law, Blackstone.) And so are municipal affairs public affairs, and municipal purposes are public purposes as contra-distinguished from private purposes.

And so the Constitution intends that corporations for public purposes may be created by special act, such as the Board of Water Commissioners, the Board of Police Commissioners, Board of Public Schools, counties, school districts, as agencies of the State to subserve the purposes of the public. And so the Legislature has declared in this act, (§ 3,) that the establishment of this Park is a municipal purpose.

A city, or purely municipal corporation, is a miniature government, having legislative, executive and judicial powers. It may pass laws, levy taxes, imprison for violation of law, authorize the issue of executions and the sale of property; but those *quasi* corporations, established for municipal purposes, have no such extended powers and are not intended from their very nature, to have them. They are mere agencies of the State to promote the convenience of the public at large.

II. As to the objection that the mode of taxation provided in the act operates unequally, and is unconstitutional, this cannot affect the question of the validity of the law establishing Forest Park, or the power of the Legislature to pass such a law under the provisions of the Constitution referred to. It will be time enough to meet those objections when an attempt is made to enforce those provisions of the law which are claimed to be unconstitutional. There is warrant enough for the Park Commissioners to act, and the court will not presume that they intend to enforce the unconstitutional provisions of the law, if there be any such.

*Charles Gibson,* & *John W. Noble,* for Respondent.

I. It is averred thatt he Forest Park act violates Sec. 27 of Art. IV. of the State Constitution.

We submit that the recital of the act that "it is impossible to make any provision by any general law to effect the desired object," (Sec. 3,) is or ought to be enough to create a doubt in the mind of the court whether such provision can be so made. This is a matter on which the action of the legislature must be conclusive. (State *ex rel.* &c. vs. County Court of New Madrid, 51 Mo., 82 ; State *ex rel.* vs. Boone Co. Court, 50 Mo., 317 ; Dill. on Mun. Corp., § 26, citing authorities ; 29 Ind., 409, overruling ; 5 Ind., 4 ; 32 Ind., 322 ; and Cooley's Const. Lim., 129, note ; State vs. Ebert, 40 Mo., 190–1.) The Court of Criminal Correction would not be necessary throughout the State. It is in the nature of a police or municipal regulation and although highly necessary in one community may be wholly inapplicable in another. So we may well

urge here, St. Louis is a great metropolis, promising rapid growth, in which the whole State is greatly interested, and a great park for it has many reasons to recommend it beyond one for any other place in the State. It is apparent a general law would not be necessary or applicable ; we rest upon the decision on this point.

II. Does the act in question violate Sec.4,Art.,VIII, that "corporations may be formed under general laws, but shall not be created by special acts, except for municipal purposes. "

Observe the persons named in the act are incorporated without the possibility of the slightest pecuniary benefit to them, or any private advantage whatever. There is no stock to be subscribed, no salary or reward ; no power of appointment of even their own successors; there is no acceptance necessary and their existence is at the will of the State.

The park is created by the State, for the use and enjoyment of the people forever ; by the State, put under control of this corporate body that compensation from means furnished by the State may be duly made to owners of property taken; that the place may be appropriately arranged and controlled, and the purposes of the State fully obtained. The members of the corporation may be properly termed civil officers.

A member of the Board of Water Commissioners is a civil officer, he exercises a share of the powers of civil government and his authority comes directly from the State. (State vs. Valle, 41 Mo., 30–31.) So are commissioners appointed by the legislature to sign City Treasury warrants. (Garnier vs. St. Louis, 37 Mo., 554.)

If we may deem the members of the corporation, officers of the State, what kind of a corporation shall we style the corporation itself?

We are dealing day by day with a most valuable class of corporations which are public in their character, one well defined branch of which includes cities, towns, and villages, called municipal corporations, and another branch which though varying in application and peculiar features are but so many instrumentalities of the State to accomplish its great design

—the welfare of the people—and are in the broadest and most statesmanlike use of the term, for *municipal purposes*. It is the narrowest construction of language to say, that "municipal purposes" means only city, town or village purposes. (See Webster's definition and Blackstone Vol. I, p. 44.)

We thus perceive that there are not only two classes of public civil corporations—but the word "municipal" has a double meaning, one a narrow, confined meaning as relating to a *municipium* or free town, or as we should say in the present age, relating to cities, towns and villages; and another broader and more usual signification relating to the State or nation. And therefore while the words "municipal corporations" have a well defined meaning and embrace cities towns and villages and nothing more, the words are not equivalent at all to those other words, "for municipal purposes." The latter embrace by the common speech of men, before and since the days of Blackstone—State or national purposes. And therefore, while municipal corporations are for municipal purposes, there are other corporations for municipal purposes that are not strictly municipal corporations. In further exemplifications of this class of corporations we may refer to State Universities, Agricultural Colleges, Lincoln Institutes and Public Schools. The State is a corporation, a legal being capable of transacting some kinds of business like a natural person, and such a being is a corporation. (State of Ind. vs. Woram, 6 Hill, 33.)

From this enumeration we pass to direct adjudications upon the point involved. In Horton vs. Mobile School Com'rs, 43 Ala., 598, there was an act passed which repealed all prior laws except those creating corporations for municipal purposes, *Held*, that these were not words of technical import and should be construed to apply to a corporation to carry on a public free school and to raise funds for its support. (Heller vs. Stremmel, 52 Mo., 309.) Examination of the statute before us as to the peculiar nature of this corporation shows: First, that this park is, in the language of the act, "set apart and appropriated as a public park for the *free* use and enjoyment of the *people* forever."

This was within the authoritative and well recognized power of the State. On the ground that the public health, convenience and welfare will be promoted, the condemnation of private property for a park is authorized. (Central Park Extension, 16 Abb. Pr., 56; Park Comm'rs vs. Williams, 51 Ills., 57; or public square, Owners vs. Albany, 15 Wend., 374; or drains and sewers, Hildreth vs. Lowell, 11 Gray 345; or for pure water, Maryland vs. Co. Comm'rs, 4 Gray, 500; Bowden vs. Stem, 27 Ala., 104; and 25 Ala., 455; Reddall vs. Bryan, 14 Md., 444; Gardner vs. Newbury, 2 John. Chy., 162; Ham vs. Salem, 10 Mass., 350; Mayor vs. Bailey, 2 Denio, 433–446; Kane vs. Baltimore, 15 Md., 240.) The legislature is the sole judge of the necessity of exercising the power of eminent domain and the amount of land to be taken. The question is political and not judicial. (People vs. Smith, 21 N. Y., 597; Gresy vs. Railroad Co., 4 Ohio St., 308; Varick vs. Smith, 5 Paige, 137.)

It is also added in the third section of the act that the establishment of the park is a municipal purpose, of great importance to the city of St. Louis; conducive alike to the dignity and character of the city, and the recreation, health and enjoyment of its inhabitants and it is impossible to make any provision by any general law to effect the desired object. It is not necessary to elucidate largely the proposition that the park is of great importance, not only to the City, but the State at large. The City and State have interests in common. By such projects population is attracted; commerce follows, the basis of taxation is increased, a happy and prosperous community grows from year to year, within our borders, and the greatest good to the greatest number is attained.

The construction put upon the sections here now presented is not new in this State. By reference to an act entitled "An Act to provide for the government of the Tower Grove Park of the City of St. Louis" approved March 9th, 1867, p. 172; it will be perceived that a corporation is just as absolutely created as by the act in question (Sec., 3–4–5–18–22; also the next act p. 176.) But the term "municipal" may be allowed to have

in the fourth section even its more limited signification, and yet there would be no prohibition of this Board of Park Commissioners, because it may exist as an auxiliary or instrumentality to aid the city as well as the State, and yet may not in a strict sense be a municipal corporation.

It by no means follows, that in creating a city the State abandons to it all corporate control or action within its territorial limits. Examples to the contrary are abundant. In St. Louis the Police Commissioners are appointed by the Governor and responsible only to the State for their conduct. The Board of Water Commissioners might be here and in some cities are regulated in the same manner. What would hinder the State from forming these boards into corporations and if so incorporated would they not be for municipal purposes and yet not municipal corporations? It is by no means essential that the operations of such a board should be confined to the city limits. The Board of Health has jurisdiction far beyond the city limits. The city of New York has been endowed with power to bring pure water for many miles to the city and its Board of Water Commissioners has corresponding jurisdiction and authority. The several parks already existing in St. Louis were created at their origin beyond the city limits. But there is a fact that removes all difficulty on the score of locality, for it was but three days after the passage of the present act, before another act was passed extending the limits of the city over the whole of Forest Park, and creating the park district into one of the wards of the city. This being at the same session and before any organization of the corporation was possible, it follows that this corporation to aid the city has never existed nor attempted to exercise any right or franchise beyond the limits of the city of St. Louis. Here then we have within the most limited sense, sufficient warrant for our existence being as we claim a corporation for municipal (or city) purposes, but not a city. It is not until organization is completed that existence is given to the artificial being and its agency commences. (Falconer vs. Campbell, 2 McLean, 95; Langhorne & Scott vs. Robinson, 20 Grattan, 661.)

III. We suppose the question of assessment for benefits cannot be raised here, but to avoid any misconception, as the authorities are abundant, we here present them. The constitutional provision is "that property subject to taxation ought to be taxed in proportion to its value." This corporation have nothing to do with this tax but to receive it after assessment and collection by officers of the State assigned to that duty and who are not parties to this action. This provision of the constitution relates only to the general revenue and has no application to assessments for local improvements on adjacent property. (Egyptian Levee Co. vs. Hardin, 27 Mo. 495; Egyptian Levee Co. vs. Cummins, 27 Mo., 495; Columbia River Bottom vs. Meier, 39 Mo., p. 56; 25 Mo., 264-268, and cases cited; 4 Comstock, 428-9; Lockwood vs. St. Louis, 24 Mo., 20; Garrett vs. St. Louis, 25 Mo., 505; Sheehan vs. Good Sam., Hosp., 50 Mo., 155; where are cited 11 Johns., 80; 13 Penn. St., 107; 2 La. Am., 329.) The principles applicable to the present case are closely applied in (Owners vs. Albany, 15 Wend., 374 (1836,) cited and noted, as above, Dill. Mun. Corp., 463, n. 2.) The power operating here is the State of Missouri. It uses no city or county instrumentality, but by its power of eminent domain erects a park "for the free use and enjoyment of the people forever." It requires a tax to be assessed by the public assessor as a special tax upon the adjoining district designated. Can it be said with any assurance, that the State cannot do what the city or county might do? We are familiar with sewer, plank road, pavement, alley and other special assessments, and in St. Louis with Lafayette Park, Tower Grove Park, and other Park assessments. Parks and sewers are but different means of preserving the common health. If the State can create a city and allow it to levy these special taxes, is it not absurd to say the State itself cannot do this? We leave this question to be dealt with by the court upon the authorities. On the one side is the ordinary pursuit by ordinary means of public good; on the other individual interests to withstand the common good. "*Salus populi suprema lex esto!*"

WAGNER, Judge, delivered the opinion of the court.

This is a proceeding by *quo warranto* against the defendants as commissioners of Forest park, and the purpose in view is to test the validity of the act establishing the park. The act was approved on the 25th day of March, 1872 (Sess. Acts 1872, p. 255), and the first section declares that a public park is established in the county of St. Louis, west of the city of St. Louis within certain boundaries designated, and then provides that the grounds embraced therein shall be set apart and appropriated as a public park, for the free use and enjoyment of the people forever.

The second section prescribes the manner of laying out the park; and the third section recites that the establishment of said park being a municipal purpose of great importance to the city of St. Louis, conducive alike to the dignity and character of the city and the recreation, health and enjoyment of its inhabitants, and it being impossible to make any provision by a general law to effect the desired object, therefore the defendants, naming them, are appointed commissioners and created a body politic and corporate, with power of succession, etc.

The fifth section gives the commissioners exclusive control over the park, empowers them to grade, lay off and ornament the same, to adopt and enforce all ordinances, rules and regulations which are needful and proper for the preservation of order and the protection of property, to employ a special police force, and to have and possess all the powers which are or may hereafter be conferred upon the city of St. Louis in respect to public parks.

The ninth section confers upon the commissioners authority to purchase the real estate of the owners embraced within the park, the title of which shall be to the people of the city and county of St. Louis, and if no agreement can be made for purchase at a reasonable price, then they are vested with power to proceed and have the same condemned.

By section 11, the commissioners are authorized to issue bonds not exceeding in amount the sum of $1,200,000, to run

for twenty years, with seven per cent. interest, which are to be secured on the lands so purchased and condemned by such instruments in writing as the commissioners may agree upon and which are to constitute a first lien thereon; the proceeds of the bonds to be appropriated first to the payment in full for the lands so purchased or condemned, and the surplus, if any, to the necessary expenses and improvement of the park.

Section 12 then lays off a park district comprising lands surrounding the park within a designated distance; and section thirteen makes it the duty of the public assessor for St. Louis county to make an annual assessment for twenty years, and to levy a special tax of one per cent. upon all the real estate within said park district, and an additional tax of three mills on that part of the real estate in that district fronting on said park running back to the distance of 250 feet. It is then provided that "the said assessments shall be added to the general tax bills against said property and collected in the same way, and when so collected, the same shall be paid over to said commissioners, by whom it shall be appropriated and paid first in liquidation of said interest, and any surplus shall be appropriated, one-half to the improvement of the park and the other half to the extinguishment of the principal of said bonds. The said interest shall be a first lien on the taxes so collected to the amount thereof due at the time. Said tax shall be a lien on the property assessed and the same penalty and interest shall be paid, in case of non-payment as is provided for other taxes levied by the State."

The principal objections urged against the validity of the act are, first, that the passage of such an act was directly prohibited by the constitution, and secondly, that it levies a special tax for public purposes.

The fourth section of the eighth article of the constitution says: "Corporations may be formed under general laws, but shall not be created by special acts except for municipal purposes."

The fifth section of the same article declares that "no municipal corporations, except cities, shall be created by special

act, and no city shall be incorporated with less than 5,000 permanent inhabitants, nor unless the people thereof by a direct vote upon the question shall have decided in favor of such incorporation."

About the interpretation of the fifth section there can be no doubt. It prohibits entirely the incorporation of any municipal corporation, except cities, by special act of the legislature and then only when they contain 5,000 permanent inhabitants.

The fourth section places a total prohibition upon the chartering of corporations by special acts except they be for municipal purposes.

The real end to be reached is to ascertain in what sense the convention, that framed the constitution, used the terms "municipal corporations" and "corporations for municipal purposes." If the two terms employed are interchangeable and express synonymous ideas, then there can be no further controversy, and it was clearly incompetent for the legislature to pass the special act we are now considering.

When the constitution uses words having a well defined technical legal meaning, it will be presumed that they were used in accordance therewith. But when no such language is used, then the interpretation should be according to the usual and general acceptation of its meaning.

The constitution was adopted by the people for the government of the people, and its framers must be understood to have employed words in their natural sense, and to have intended what they said. What is meant by a municipal corporation is well known by all law writers, and is sharply defined and recognized. In a case decided at the present term it was said: "The definition of a municipal corporation would only include organized cities and towns and other like organizations with political and legislative powers for the local, civil government and police regulations of the inhabitants of the particular districts included in the boundaries of the corporation." (Heller vs. Stremmel, 52 Mo., 309.)

There are other corporations of a public character created

by the legislature for public purposes. These are political sub-divisions or State agencies and are denominated *quasi* corporations. They constitute a part of the State government with special powers, duties and functions. Their duties are generally local, it is true, but they act in obedience to State laws and derive all their power to act from the sovereign power of the State.

In a recent elementary treatise the author thus lays down the distinction between the different classes: " All corporations intended as agencies in the administration of civil government are public as distinguished from private corporations. Thus, an incorporated school, district or county, as well as city, is a public corporation; but the school-district, or county, properly speaking, is not, while the city is, a municipal corporation. All municipal corporations are public bodies, created for civil or political purposes; but all civil, political or public corporations are not, in the proper use of language, municipal corporations." (Dill. Mun. Corp., § 10). As the county is a political agency or *quasi* corporation, instituted for convenience and to carry out the purposes of the government, the legislature possesses the undoubted right to direct the manner in which it shall proceed, and to determine what shall be done with what is entrusted to its care. (State, &c. vs. St. Louis County Court, 34 Mo., 546 ; Hamilton vs. St. Louis Co., 15 Mo., 3.) But although elaborately argued I cannot see that these principles help the act in question. Public corporations are expressly forbidden to be chartered by special acts. By this act there is no municipal corporation chartered nor attempted to be chartered. The declaration that the corporation is for municipal purposes does not make it so. There may be corporations for municipal purposes, but they must be connected with the municipal corporation itself and instituted for the purpose of carrying out some of the known objects of the municipality. But in the present case a district outside of the city is incorporated ; none of the commissioners who have the exclusive management and control of it reside within its boundaries; the peo-

ple who own the lands within it are taxed against their consent by persons who have no interests in common with them, and then they are gravely told that resistance is useless·; that they have been incorporated for municipal purposes. If this can be done, then special acts of incorporation for municipal purposes may be passed in the vicinity· of all our towns which do not rise to the dignity of cities, but are nevertheless municipal corporations, and the farming community will be made to pay for whatever they fancy or conceive will redound to their benefit. If the legislature can do this, it is difficult to set any bounds to their power. The constitution never contemplated such an exercise of power, but sought on the contrary to place a prohibition on it. Its language, fairly and properly interpreted, does not countenance it. The ingenious arguments that have been made to sustain the validity of the act resolve themselves into plausible pretexts for violating the plain meaning of the constitution.

In the construction of the constitution I am unwilling to apply to it those elastic principles which will make it extend any required length to accomplish an end or a purpose. Unless some regard is paid to the injunctions of our organic law, written constitutions of government will be regarded as of no value, and the experiment of setting a boundary to capricious and arbitrary power will be a complete failure.

But there is another point which remains· to be noticed. By the law, the park is set apart for the free use and enjoyment of the people forever, and it is declared to be of great importance to the city of St. Louis, conducive alike to the dignity and character of the city and the recreation, health and enjoyment of its inhabitants. Yet, strange as it may appear, neither the people themselves nor the inhabitants of the city of St. Louis, for whose especial benefit it is created, are taxed one cent for its establishment; but the exclusive privilege of paying nearly one and a quarter millions of dollars is cast upon a few citizens who are inhabitants of the district. Nothing is better settled than that special taxation for objects that are general and public is illegal.

In the case of Wells vs. The City of Weston,( 22 Mo., 384,) it was decided that the legislature could not authorize a municipal corporation to tax, for its own local support, lands lying beyond the corporate limits.

In the Egyptian Levee Company vs. Hardin, (27 Mo., 495) the corporation was formed for the purpose of reclaiming a certain district from inundation by leveeing, ditching and embanking, and the tax was on the land-owners within the district whose property was reclaimed and benefited. They were the persons primarily interested, and it was a local taxation for a local purpose.

The case of the Owners, etc. vs. The Mayor of Albany (15 Wend., 374), which has been cited as directly in point, is totally dissimilar to the case here. There it was held that, taking the grounds of individuals in a city to convert into a public square was taking private property for public use as much as if the grounds had been converted into a street, and the fact that the damages were assessed upon the owners of adjoining property, instead of being levied as a general tax upon the city was no evidence that the property was not taken for public use. In that case the property was taken by the city, in the city and for the city. In the present case the property is not in the city; it is not taken by the city, but it does purport to be for the use of the city. That is to say, citizens outside of the city are deprived of their property for the special use and benefit of the city. Admit this principle, and it would be perfectly competent for the legislature to pass a special act authorizing the building of a court-house for the use of the whole county and assess the cost of construction against the few individuals who happen to own property immediately adjoining the court-house square. Thus we have the broad pretension set up of justifying special taxation for objects which are avowed to be general and not local. Local assessments are constitutional only when imposed to pay for local improvements conferring special benefits. Uphold this law, and the time will probably come when it will be deemed advisable to provide statuary and other costly adornments for

the park.   There would be nothing to hinder their cost being provided for in the same way.

The legislature has no power to take the money of one man and transfer to another, nor can it select a particular township and say that it shall pay all the taxes of the county, nor designate a certain county and declare it shall assume all the burdens of the State.   Yet that is precisely the principle that must be established to sustain this act.

The constitution has wisely erected a barrier against this exorbitant power, and there is a time in the tide of this special taxation when it must be said, " thus far shalt thou go and no farther !"

There is no question as to the desirableness of public parks in the vicinity of large cities and the benefits the people derive from them ; but these benefits would be too dearly purchased at the expense of a violated constitution, and by striking down the sacred rights of the citizen.

I am of the opinion that there could be a judgment of ouster. All the judges concur except Judge Sherwood, who is absent.

On Motion for Re-hearing.

Adams, Judge, delivered the opinion of the court.

In overruling this motion for a rehearing, it may be proper to state briefly, some additional views which influenced the result unanimously arrived at by the court.

The fourth section of the eighth article of the constitution provides : "Corporations may be formed under general laws, but shall not be created by special acts, except for municipal purposes," etc.

By the fifth section of the same article it is provided : " No municipal corporations except cities, shall be created by special act; and no city shall be incorporated with less than five thousand inhabitants."

From these provisions it is manifest that the legislature is prohibited from creating any sort of corporations by special acts, except such as are for municipal purposes.

A corporation for municipal purposes is either a municipality, such as a city, or town, created expressly for local self-govern-

ment, with delegated legislative powers; or it may be a sub-division of the State for governmental purposes, such as a county, a school or road district, &c. These sub-divisions are sometimes called *quasi* corporations; but they are nevertheless corporations within the meaning of the constitution. It was therefore eminently proper, in framing the constitution, that there should be no express or implied prohibition against creating such sub-divisions or *quasi* corporations for municipal purposes.

The phrase, "municipal purposes," was intended to embrace some of the functions of government, local or general; and no corporation, not exclusively designed for this end, can be properly denominated a corporation for municipal purposes. (See Ang. and Ames Corp., 8, 17, secs. 15 to 24, inclusive; Dill. Mun. Corp., 30, 31; Cooley's Const. Lim., chap. 8; Hamilton county vs. Mighels, 7 Ohio St., 109.)

The constitution allows cities of not less than five thousand inhabitants to be incorporated by special act. The design was that their charters should contain all powers necessary and proper for the management of local matters; and it was not contemplated that independent corporations should be created by special acts to perform any of the functions of a city government.

Cities may be permitted to establish and maintain parks for the convenience and use of the public. If their charters do not provide for this, they may be amended so as to embrace the requisite powers. But all such charters are subordinate to the general welfare of the State, and therefore, sub-divisions of the State or *quasi* corporations may be created by special acts if necessary, within the limits of a city, for government purposes, or in the language of the constitution, for municipal purposes.

It may be urged that such sub-divisions ought to be created by general laws, without resort to special legislation. As a general rule this is true. But cases might arise where special acts might become absolutely necessary; such as the establishment of a new county, or a new school district in some partic-

State ex rel. Chouteau, et al. v. Leffingwell, et al.

ular locality, &c. It may also be contended that the constitution as a whole, without regard to these provisions, necessarily implies power in the Legislature to create sub-divisions of the State for municipal purposes. This, no doubt, would be a proper deduction, if the prohibitory clauses had been omitted. A State Legislature may, within the sphere for which it was created, exercise all legislative power not prohibited by the constitution of the United States or its own State constitution.

The aim of the constitution was to prevent the creation of corporations by special legislation, except for a particular purpose. In framing this prohibition, it was necessary to exclude the idea that *quasi* corporations, or sub-divisions of the State for municipal purposes, were to be embraced among the inhibited acts of legislation. No language could have expressed this more clearly than the phrase "except for municipal purposes," as used in the constitution.

The question in regard to taxing a particular locality for general purposes, is sufficiently discussed in the opinion under review. Private property cannot be taken for public use without a just compensation. Special benefits cannot form any part of such compensation, unless they attach to and become a part of the taxed property. The phrase, "special benefits," is a misnomer as applied here. A lot holder has a property interest or easement in the adjoining street independent of the general public, and the improvement of the street may be a special benefit or an absolute injury to his lot. If it be a benefit he must pay for it, and a special tax may be levied on his lot for that purpose. But adjacent property holders can have no easement or property right whatever in a park. Their interest is precisely the same as all other citizens, and a tax upon them because of their locality, is only a thin guise for confiscating their property without any just compensation.

The motion for a re-hearing is overruled; all the judges concur except Judge Napton, who did not sit, having been of counsel.