A. M. BRADSHAW v. THE BOARD OF COMMISSIONERS OF GUILFORD COUNTY.

*Fence Law—Taxes—Injunction.*

1. Where the statute provided, that upon the written application of one-fifth of the qualified voters of any district or territory in certain counties, whether the boundaries follow township lines or not, it shall be the duties of the commissioners to submit the question of "Stock Law" or "No Stock Law," and if a majority of the votes shall be in favor of the stock law, a fence shall be built; *Held*, that the commissioners have no power when several of these districts adjoin each other, to unite them into one territory, provide for the construction of one boundary fence, and assess a unform tax on all the real property in the several districts so united, to meet the expense of the fence.

2. Where the act provided that the commissioners should levy a special tax on all the real estate in said district, which was taxable by the State and county; *Held*, not to embrace the real estate of schools and railroads, which was not taxable for general purposes.

3. *Quære?* Whether it is necessary for the Justices of the Peace to act with the commissioners in levying the taxes for the local improvements under these acts; but if so, in this case, it may be obviated when the tax is to be readjusted, when the justices and commissioners may act in concert.

4. It is error to dismiss an action upon refusing to continue an injunction to the hearing. The Court should refuse the application to continue the injunction but allow the action itself to proceed.

(*Commissioners of Greene* v. *Commissioners of Lenoir, ante* 180, cited and approved).

This was a motion to continue an injunction to the hearing heard before *McKoy, Judge,* at Spring Term, 1884, of GUILFORD Superior Court.

His Honor refused the motion, dissolved the restraining order theretofore granted and dismissed the action.

From this judgment the plaintiffs appealed.

*Mr. J. A. Barringer,* for plaintiffs.
*Messrs. Graham & Ruffin,* for defendant.

SMITH, C. J.   At the session of the General Assembly held in 1879, an act was passed, authorizing the formation of districts in certain enumerated counties, with the approval of the voters,

wherein stock should not be allowed to run at large, and directing the building of fences enclosing the same. Acts, 1879, chap. 135. In the year 1881 its provisions were extended to Guilford and three other counties with some modifications. Acts, 1881, chap. 94. Among the amendments introduced is an additional section, following section 20 of the former act in these words:

"That upon the written application of one-fifth of the qualified voters of any district or territory in Lincoln, Catawba, Alexander, Burke, Guilford, Randolph, Rowan or Gaston counties, whether the boundaries of said district follow township lines or not, made to the county commissioners at any time, and setting forth well defined boundaries of said district, it shall be the duty of the said commissioners to submit the question of said "Stock law," or "No stock law," to the qualified voters of said district, and if, at any such election, a majority of the votes cast shall be in favor of said stock law, then the provisions of this act shall be in force over the whole of said district." Section 2.

In pursuance of this enactment, an election was held on May 25, 1882, in a portion of the territory of Guilford, with its boundaries ascertained in the application to the commissioners, designated and known as the New Garden District, wherein the approval of the popular vote was given to its formation into a stock law district.

Similar proceedings, and with the same result, were had, by an election held on the 29th day of June following, and an adjacent territory, known as Page's District, put under operation of the law.

In like manner other territory, adjacent to the two preceding districts thus formed, known as "Bruce Cross Roads District," was put under the law by the result of a popular vote taken on the 30th day of December in the same year.

In giving effect to these proceedings and the directions of the statute, as undisputed by the commissioners, they have united these districts into one territory, and provided for the construction of one boundary fence to enclose the whole, and to this end

levied and assessed a uniform tax of one dollar and a half upon each one hundred dollars valuation of all the real estate subject to taxation under the general law, within the enclosing boundary, to meet the expenses of construction.

The present action is instituted by the plaintiff and other real estate owners in the New Garden District, against the commissioners to restrain the enforcement of a part of this tax, the collection of which is now being made by the sheriff, and the interposition of the court is asked upon these grounds:

(1) The plaintiffs are only liable for the expenses incurred in the erection of a fence around their district, created by a separate and independent vote.

(2) The assessment leaves out certain real estate owned by railroads, and other owned and used for school purposes.

(3) The tax was not ascertained and assessed by the concurring action of the commissioners and justices of the county, but is the sole act of the former.

After a temporary restraining order, and on notice, the plaintiffs applied to the judge for an interlocutory injunction against the collection of the tax, until the cause could be heard, and numerous affidavits were read in support of, and in opposition to, the order. His Honor denied the application and dismissed the action, from which the plaintiffs appeal.

1. The first objection to the method of assessing the tax is in our opinion well taken. The commissioners had no power to consolidate the districts into one, and raise the means of building the boundary around it upon all the lands comprised within its limits by imposing an *ad valorem* tax. The vote taken in the New Garden District was in favor of a stock-law within the area it comprises, and of a tax upon the real estate it embraces, to defray the cost of enclosing that territory alone. And so it was with each of the other territorial districts with its specific boundaries. Had a general vote been cast on a proposition to enclose all the territory of the separate districts under one fence, at the common cost of the real estate owners, the action of the commissioners

would be rightful.   But no such vote was authorized and none such taken.   The voters in the several districts have given their consent to the enclosing of each, without reference to any past or future action among the tax-payers upon whom the burden falls of other portions of the county, whether adjacent or distant. The effect of the erection into the separate districts of adjoining lands, may be, by mutual arrangement, to dispense with a fence and divisional lines, and thus reduce the cost to each; but it cannot obliterate them so as to make one common territory of all. The districts remain as before, distinct and independent, and in each the cost of construction must rest upon the real estate owners in each, for its protection against the incursions of stock.   There never has been obtained the sanction of the voters to a proposition for enclosing the whole under one fence, an indispensable condition to the levy of an indiscriminate *ad valorem* tax upon all.

This is in conformity with our ruling in a case, presenting somewhat the same feature, decided at the present term, and renders further discussion needless.   *Commissioners of Greene* v. *Commissioners of Lenoir, ante* 180.

2. The 5th section of the act of 1879 places the erection and repair of fences under the exclusive control of the county commissioners; and the next section confers upon them the right to "levy and collect, as they do other taxes, a special tax upon all real property, taxable by the State and county, within the county, township or district, which may adopt this act."

The right to tax for the local improvement can be only exercised under law, and must be subject to the limitations which it imposes.

The authority is given to tax, for the expenses to be incurred, such lands to derive benefit therefrom as are within the prescribed territory and are taxable for general purposes.   The assessment must conform to the requirements of the act, or it is altogether unauthorized.   Nor do we think the exemption is beyond the power of the Legislature to allow, or that it impairs the validity of the statute that non-taxable real estate is not sub-

ject to the common burden. Of this exoneration those who pass the law must be the judges, and it cannot be allowed to defeat the beneficial provision it contains. This objection cannot be sustained.

3. The remaining cause of complaint that the justices did not co-operate with the commissioners in ascertaining the sum required, and imposing the *ad valorem* tax may be obviated when the tax is to be readjusted, and the costs of enclosing each district distributed uniformly on the taxable real estate lying therein. The justices and the commissioners could then act in concurrence.

But we are inclined to the opinion that the duty of making the estimate and assessment is devolved upon the commissioners alone.

The commissioners, in the words of the act, may "*levy and collect*," as alone they were to control and manage the constructed fencing; and the other words, "as they do other taxes," are intended to point out the mode of assessment and collection to be pursued, as is required in the case of county taxes in general. There is no intimation that the justices are to participate in this action.

Again, general taxes for county purposes are leviable but once in the year, to-wit: On the first Monday in June, *Code*, §707, part 1, and it can hardly be supposed that the progress of these enterprises was to be suspended and delayed to await the joint meeting, while the commissioners, and they alone, are mentioned as the persons who are to exercise the power which is conferred in the section.

The error which has been pointed out will require for its correction a different apportionment of the tax, requiring of each a sum sufficient to secure its enclosure, and, if it were necessary, the two bodies could co-operate in the required action.

We do not inquire how the interest of the tax-payers who have lands in the New Garden District may be affected by the change in the manner of assessment, nor whether, as the plain-

tiffs insist, these taxes will be equally diminished, when they alone are required to build the surrounding fence. It is sufficient to say, they are not legally assessed under the law, and the plaintiffs have a right to a new and correct assessment.

There is also error in the final disposition of the cause. The cause was not before the court for a final hearing. The application was for an injunction to remain in force until the hearing, and was heard upon *ex-parte* affidavits. The court could do no more than refuse to make the order and let the cause proceed.

Its dismissal, except by consent, at this stage of the case was wrongful.

In our opinion, the ruling was erroneous, and the commissioners should have been directed to proceed to a re-assessment and apportionment as we have indicated. There is error. Let this be certified.

Error.                                        Reversed.