E. D. JONES et al. v. THE COMMISSIONERS OF PERSON COUNTY.

*Tax—State and County—Township—Municipal Corporation—Subscription to a Railroad—Elections—County Commissioners—Contribution—Cities—Towns—Necessary Expenses—Ordinary Purposes—Statute of Limitations.*

1. An action was commenced by certain tax-payers in behalf of themselves and others, among other purposes, to declare void an election held to allow certain townships to subscribe stock to a railroad company, on account of irregularities: *Held*, (1) the action could be brought, being equitable in its nature, even though no remedy was given by statute; (2) while no statute of limitations is applicable, still such action should be brought within reasonable time, and before the rights of innocent third parties have intervened.

2. The equation and limitation of taxation established by the Constitution (Art 5, § 1) applies only to taxes levied for ordinary purposes of the State and counties, and, as to levies of taxes for such purposes, it must be observed.

3. A county, when it contracts a debt, pledges its faith, or loans its credit, as allowed by Art. 7, § 7, of the Constitution, must levy taxes necessary to raise revenue for such purposes upon all the property in the same, except such property as is exempted from taxation.

4. A city, town, or other municipal corporation, "for the necessary expenses" thereof, must levy taxes upon all the property in the same, with the like exception.

5. A city, town, or other municipal corporation, when it contracts a debt, pledges its faith, or loans its credit, as allowed by Art. 7, § 7, must levy taxes upon all property in the same, with the like exception.

6. The Constitution does not *require* that a capitation tax shall be levied, except when taxes are levied for ordinary State and county purposes.

7. Such ordinary purposes embrace the case when the County Commissioners levy more than double the State tax "for a special purpose, with the approval of the General Assembly," as provided by Art. 5, § 6.

8. A township has corporate existence, and the Legislature may invest it with pertinent corporate powers, as to subscribe for the capital stock of a railroad company.

9. There is no statute of limitations applicable to an action brought by citizens to test the validity of an election held to ascertain the will of the majority of the qualified voters in a township relative to subscribing stock to a railroad company, but such action must be brought within a reasonable time.

This was a CIVIL ACTION, tried before *Graves, J.,* at Fall Term, 1889, of PERSON Superior Court.

The statute (Acts 1885, ch. 342, §§ 8, 9, 10), entitled "An act to renew the charter of the Roxboro Railroad Company, and for other purposes," provides that the county of Person, or any township in that county, may subscribe for the capital stock of said railroad company—that townships respectively may subscribe for such stock not exceeding in its par value the sum of $10,000, and "if a majority of all the votes cast (at an election to be held) shall be 'for subscription,' as in the statute prescribed, and if such subscription shall be made, then the County Commissioners of said county shall issue coupon bonds of the township so subscribing as prescribed, and shall, in addition to the other taxes, each year compute and levy upon *all property* in each of the townships so subscribing to the capital stock of said railroad company, a sufficient amount to pay the interest on the bonds issued on account of the subscription of said township, and provide a sum equal to one-tenth of said subscription for a sinking fund," &c., &c.

In pursuance of the direction of this statute, an election was ordered and held in Holloway's township, in said county, on the 7th day of August, 1886, to ascertain whether a majority of the votes cast would be in favor of subscribing for such capital stock to the amount of $6,000. The said commissioners ascertained the result of such election, and declared that a majority of the qualified voters of that township had voted in favor of the subscription of the sum last mentioned, and thereupon and thereafter, on the 15th of December, 1886, they appointed an agent, as allowed by the statute, to so subscribe for such last mentioned amount of stock. Afterwards appropriate bonds were issued and taxes levied to pay the accruing interest thereon, and to provide a sinking fund.

The plaintiffs are citizens and tax-payers of the township mentioned, and bring this action, which began on the 7th of November, 1889, in behalf of themselves and all other

like tax-payers, against the commissioners of said county, to have the election mentioned declared void for irregularities specified and set forth in the complaint, for a perpetual injunction restraining the defendants from levying the taxes to pay the interest, &c., on said bonds, and for general relief.

The plaintiffs filed their complaint and an amended complaint, alleging, much in detail, irregularities in and about the election; that the same was void; that a majority of the qualified voters of the township did not vote in favor of "For subscription," &c., &c.

The defendants filed answers, denying directly the material allegations of the complaint, and alleging specifically that the election was duly and regularly held as directed by the statute, and that a majority of the qualified voters of the township voted "For subscription," &c.

The plaintiffs moved for an injunction pending the action. The pleadings were used as affidavits at the hearing of the motion, and both parties produced numerous other affidavits, and also documentary evidence. The Court granted the motion, and the defendants, having excepted, appealed from the order allowing the same to this Court.

*Messrs. J. A. Long, A. W. Graham* and *W. W. Kitchin,* for plaintiffs.

*Messrs. John W. Daniel, A. C. Denniston, J. W. Graham, W. W. Fuller* and *W. A. Guthrie,* for defendants.

MERRIMON, C. J.—after stating the facts: A chief purpose of this action is to contest the validity of the election mentioned in the pleadings, and if it should be adjudged valid and sufficient, then to contest the correctness of the result thereof as ascertained and declared by the defendants, and to this aspect of the case our attention is first directed.

It is not questioned that the statute (Acts 1885, ch. 342) authorized and required the defendants to cause such elec-

tion to be held in the contingency provided for. It appears, we think, very clearly, from the evidence, that they purported to do so by proper orders and action, substantially in all respects, in pursuance of, and as required by, that statute. The presumption is, nothing to the contrary appearing, that they exercised the authority and powers conferred upon them correctly, and hence, that the election was properly held and the result thereof correctly ascertained.

The plaintiffs contend, however, that they have the right to contest that election in this action, in the respects and for the causes and grounds alleged and specified in their complaint. Very certainly, an election like that in question might be contested by tax-payers affected by it for sufficient cause. *Perry* v. *Whitaker*, 71 N. C., 475, 477; *Smallwood* v. *Newbern*, 90 N. C., 36; *McCormac* v. *Commissioners, id.*, 441; *Caldwell* v. *Commissioners, id.*, 453; *Bradshaw* v. *Commissioners*, 92 N. C., 278; *McNair* v. *Commissioners*, 93 N. C , 370; *McDowell* v. *Construction Co.*, 96 N. C., 514; *Goforth* v. *Construction Co , id.*, 536; *Wood* v. *Oxford*, 97 N. C., 227; *Riggsbee* v. *Durham*, 98 N. C., 81; *Riggsbee* v. *Durham*, 99 N. C., 341. But such contest must be begun within a reasonable period of time next after the result of the election has been declared, and, ordinarily, before any authorized action has been taken in pursuance of it, whereby rights of parties may have accrued. What may be such reasonable period must depend, to some extent, upon the circumstances of each case. Regularly, contest should be made promptly after the result of the election shall be ascertained. It is better that this should be done in all cases, but there might be causes that would excuse some delay, as where, in cases like this, the commissioners at first manifested a purpose not to take action in pursuance of the ascertained result, but after the lapse of time, longer or shorter, they fraudulently and collusively, with persons or corporations, seeking and intending to take benefit thereby, should proceed to take action. In such case, tax-payers might then

promptly take action to contest the election for any proper cause, if rights of innocent parties had not accrued. Justice, fairness, and sound public policy alike suggest and require that such contests shall be made in good faith, with reason-able promptness and for just cause. The nature of such matters forbid intentional, careless or negligent delay.

The election in question was apparently sufficiently regu-lar and valid. It was held on the 7th day of August, 1886. In December of that year, a tax-payer of the township, suing in behalf of himself and all other tax-payers inter-ested, brought his action in the proper Court to contest the election as to its validity and the declared result thereof. In August of the year next thereafter, that action was ended by a judgment of nonsuit. This action was begun on the 4th of November, 1889, after the agent of the township men-tioned had subscribed for capital stock of the railroad com-pany mentioned, after the bonds of the township had been issued in pursuance of the election, and after the defendants had levied the tax to pay accruing interest on such bonds and provide for the sinking fund required. No fraudulent conduct on the part of the defendants is charged, nor any collusion between them and the said railroad company, nor is any cause assigned for the long delay in bringing this action.

In view of these facts, we think it very clear that the plaintiffs ought not to be allowed to maintain the action. Familiar with the facts alleged by them, advertent to the fact that an action had been brought to contest the election, which was abandoned, as they must have been; that the railroad company was actively prosecuting the construction of its road, which the subscription for its capital stock was intended to promote; with the fact that an agent was appointed to subscribe for the stock, they delayed to bring their action for more than three years. No excuse whatever for such delay is alleged. Manifestly, the plaintiffs care-

lessly and negligently, and without the slightest cause, so far as appears, failed to bring their action within a reasonable period of time, and this, too, while important facts, of which they must have had knowledge, prompted them to do so, if they were dissatisfied with the election for any proper cause. There was not merely negligent delay, but as well important rights of parties had accrued, who, so far as appears, were in no way chargeable with any fraudulent conduct as to such rights, or with notice of the alleged irregularities of the election. While the law is careful to protect the rights of tax-payers in this and like cases, they must be diligent and invoke its aid in apt time. Elections are serious and important things, and not to be interfered with for slight causes, or at any and all times, at the pleasure of complaining parties. They are authorized by the law and serve important purposes in the economy of government, and, when apparently regular and·valid, must be upheld in all connections, unless they shall be contested at the proper time and in the proper way.

The counsel for the appellees cited and relied, in part, upon *McDowell* v. *Construction Company, supra*, to show that this action was brought in apt time. That case is very different in material respects from the present one. In it the plaintiffs alleged facts and· circumstances, and produced evidence going strongly to prove the same, to show excusable and not unreasonable delay in bringing the action; they alleged fraudulent combination of the defendants to have the defendant commissioners unlawfully declare the result of the election, and that the defendants, other than themselves, had notice and knowledge of their unlawful and fraudulent acts, &c. That case came before this Court by appeal from the order of the Court below denying a motion for injunction pending the action—it was not here upon the merits. The Court there said, among other things: "There is no statutory provision that requires such elections to be

contested at once after they take place and in a particular manner. It was, therefore, sufficient for the plaintiff to bring his action within a reasonable period and in the ordinary method."

The defendants pleaded, "that, more than three years having elapsed since the result of the election was declared and announced," and insisted that, therefore, the plaintiff's right to maintain this action is barred by the statute of limitation (*The Code*, § 155). The plaintiffs contended that they had the right to bring their action at any time within ten years next after the result of the election was declared, and insisted that their cause of action was embraced by the statute (*The Code*, § 158).

We think the statute of limitation has no application in this and like cases. The action is peculiar and exceptional. The purpose is not to litigate, settle and administer any positive primary right of the plaintiffs, but simply to contest the validity of the election—to try and determine that it was or was not regular and valid, and the result thereof duly ascertained or otherwise, and to grant such relief in that respect as the nature and circumstances of the case may require. The rights of the plaintiffs are only secondary and incidental, dependent upon the election and its results. The matter in controversy, the real cause of action, concerns the public—all the tax-payers in the township, and in some cases possibly others; the plaintiffs, by reason of their interest as such tax-payers—secondary and indirect in its nature—are allowed to maintain the action, not to litigate their several and particular liabilities to pay the taxes levied, but, as we have said, to contest the validity or invalidity of the election, and thus settle and conclude the general liability or non-liability created by it, as contemplated by the statute allowing the election to be held.

No statute gives this action, and actions in like cases, nor is there any statutory provision for contesting elections of

the kind in question. The Constitution (Art. 7, § 7) allows municipal corporations, as prescribed, to contract debts, pledge their faith, or to loan their credit, "by a vote of the majority of the qualified voters therein." But this does not imply that the action of the County Commissioners to order an election for such purpose, and ascertain the result thereof, shall be final and conclusive. Certainly not, in the absence of some positive legislative enactment so providing. Generally, the duties of persons charged with the conduct of such elections are largely ministerial, and they are not well qualified to decide the legal questions arising in and about the elections they superintend. It is intended that they shall observe statutory directions, hold the elections and ascertain the result of them by adding the votes cast together, and such result will prevail, unless persons interested shall see fit, at the proper time, to contest the election in some aspect of it.

Such elections, not unfrequently, are of very great moment to tax-payers, as well as those who are intended to take particular benefit by them. They may involve rights, liabilities and questions of law and fact very important and complex in their nature. The law does not contemplate or intend that the action of the persons who hold the election and ascertain its results in matters so serious shall be conclusive. They might, through ignorance, honest mistake, or corrupt purpose, decide improperly questions involving the validity or invalidity of the election, or they might falsely ascertain the result thereof. It cannot be that tax-payers, in such case, have no remedy, legal or equitable. Clearly, in the absence of any statutory remedy, the Superior Courts, in the exercise of their powers of general jurisdiction, both legal and equitable, may entertain actions brought by interested parties to contest such elections, and determine that they are valid or invalid, and as well, the true result of them; and, to that end, may make such orders and take such action as may be allowed by general principles of law

and equity applicable. Such exceptional actions are equitable in their nature, and are allowed by the Courts in the exercise of their chancery jurisdiction to prevent a failure of justice and give just effect to the will of the people. They have been sustained in many cases. See those cited, *supra;* see also *Calaveras County* v. *Brockway,* 30 Cal., 325; *Gibson* v. *Board Supervisors,* 80 Cal., 359; *Boren* v. *Smith,* 47 Ill., 482; *People* v. *Wiant,* 48 Ill., 263; *Dickey* v. *Reed,* 68 Ill., 262.

As we have seen, it is not the purpose of the plaintiffs by this action to enforce any direct positive private rights of their own, but to protect the tax-payers, whose rights are affected adversely, as is alleged, against an election unlawfully ordered and held, or, if it was lawful in form, then to give effect to the will of the people of the township, as expressed at and by it. To these ends, they invoke the chancery authority of the Court, as above explained. But the Court will not grant its aid, so invoked, unless it appears that the plaintiffs have been reasonably diligent—this depending upon the facts and circumstances of the case—in bringing their action. Especially it will not, where they have negligently delayed to bring their action until the rights of innocent parties have accrued. Nor will the Court tolerate, much less encourage, merely captious or vexatious interference with such elections. It must appear that the action was prompted by good faith, reasonable diligence and a substantial cause of action. Otherwise, the plaintiffs cannot have the relief they demand, and the action will be dismissed. Their right to sue does not depend at all upon the statute of limitation, but upon the application of plain principles of equity, which require that a party seeking relief must, before he is entitled to have the same, do, as to the matter in question, what, in justice, fairness and good conscience he should have done on his part. In cases like the present one, unless such constituent equitable element appears, no sufficient cause of action

is alleged. *Vigilantibus non dormientibus æquitas subvenit.* Story's Eq. Jur., 959*a*, 1284*a*.

We are, therefore, of opinion that the plaintiffs have not alleged a cause of action that entitles them to contest the election mentioned in the pleading, as to its validity, or as to the ascertained result of the same. Hence, the motion for an injunction, pending the action on that account, should have been denied by the Court below.

The plaintiffs further contended in the Court below, and as well in this Court, that the statute first above cited, under which the election was held, the bonds in question were issued, and the tax complained of was levied, was void as to such bonds and tax "in that it authorizes a tax upon property alone, and not upon polls, thereby destroying the equation required by the Constitution for such purposes to be preserved in taxation." In our judgment, a proper and necessary interpretation of the several provisions of the Constitution pertinent and material to the question thus raised does not warrant such contention of the plaintiffs. They insist that the Constitution (Art. 5, §§ 1 and 3), prescribe, define and establish the several subjects of taxation, and the necessary equation of the same as between tax on polls and the same on property of all kinds for the purposes contemplated by the statutory provision in question.

The article just cited is entitled "Revenue and Taxation," and the sections cited provide that "The General Assembly shall levy a capitation tax on every male inhabitant of the State over twenty-one and under fifty years of age, which shall be equal on each to the tax on property valued at three hundred dollars in cash. The commissioners of the several counties may exempt from capitation tax in special cases, on account of poverty and infirmity, and the State and county capitation tax combined shall never exceed two dollars on the head."

107—17

"Laws shall be passed taxing, by a uniform rule, all monies, credits, investments in bonds, stocks, joint stock companies or otherwise, and also all real and personal property according to its true value in money. The General Assembly may also tax trades, professions, franchises and incomes, provided that no income shall be taxed when the property from which the income is derived is taxed." Thus is established the equation of capitation and property taxation contended for by the plaintiffs. But it is settled by many decisions of this Court that it does not establish an exclusive system or scheme of taxation, applicable and to be observed in all cases and for all purposes; that, on the contrary, it applies only to the revenue and taxation necessary for the *ordinary purposes* of the State and the several counties thereof. Neither in terms, nor by implication, or effect, does it apply to all purposes mentioned in the *Article* cited; especially, it does not apply to the raising of revenue necessary to pay the debts of the State and of the several counties existing anterior to the adoption of the present Constitution, and other purposes specified. It is also important, in this connection, to observe that the *Article* does not provide or declare that the equation so established shall be of universal and exclusive application—that it in its terms requires that the capitation tax shall be levied when property shall be taxed—that it expressly mentions only the State and counties in connection with the subjects of revenue and taxation, and does not mention cities, towns and other municipal corporations, or make any reference to or provide for or as to them. It does not provide or direct how the revenues for those purposes, ordinary or extraordinary, shall be raised. As it so expressly provides, much in detail, as to State and county revenue and taxation, it is singular that it fails to make some reference to municipal corporations in such respect if it was intended to embrace them. That it does not so intend is the more manifest, in that they are expressly

provided for in such respects in another distinct article of
the Constitution. Moreover, the State and counties, in their
nature as to their purposes and wants, are, in many impor-
tant respects, very different, and on a different footing from
ordinary municipal corporations as to revenue and taxation,
and it is, therefore, appropriate and orderly that provision
as to them is made in a separate *Article*. *Railroad* v. *Hol-
den*, 63 N. C., 410; *Haughton* v. *Commissioners*, 70 N. C., 466;
*Street* v. *Commissioners, ibid.*, 644; *French* v. *Commissioners*,
74 N. C., 692, and there are numerous other cases to the like
effect.

Article 7 of the Constitution is entitled "Municipal Cor-
porations," and is exclusively devoted to that subject. Par-
ticularly for the present purpose, it describes and establishes
how they may create debts and the method of raising reve-
nue for their purposes. The fourteenth section thereof pro-
vides that "the General Assembly shall have full power, by
statute, to modify, change or abrogate any and all of the pro-
visions of this article and substitute others in their place,
except sections 7, 9 and 13." Sections 7 and 9, not subject to
modification, change or abrogation, have express reference
to debts and liabilities, such as municipal corporations may
create or incur, and to taxation. They are material here,
and provide that "no county, city, town or other municipal
corporation shall contract any debt, pledge its faith, or loan
its credit, nor shall any tax be levied or collected by any
officer of the same, except for the necessary expenses thereof,
unless by a vote of the majority of the qualified voters
therein."

"All taxes levied by any county, city, town or township,
shall be uniform and *ad valorem* upon all property in the
same, except property exempted by this Constitution."

It should be noticed that *counties* are embraced in these
sections, as they are, also, in Art. 5, cited and considered
above. As we have seen, in the latter *Article*, the equation

of taxation, as above explained, applies to the raising of revenue for their ordinary purposes, that is, their ordinary purposes as political subdivisions of the State, but it does not apply in the levy of taxes to pay debts of counties contracted anterior to the adoption of the present Constitution. As simply such subdivisions of the State, they are not municipal corporations proper, but are constituent parts of the State, serving mainly its purposes in the administration of government in the localities where they are severally situate. In the sections above recited of Art. 7, they are put on the footing of municipal corporations proper, as they may be, for some purposes, to a greater or less extent, particularly in the creation of debts and the like, as they may be allowed to create them by statute. It is not contemplated that counties, simply as such, shall, ordinarily, contract debts or create obligations in the nature of debts; it is intended that money shall be raised currently, by taxation, to serve their ordinary purposes and pay their ordinary expenses.

As we have already seen, counties must be governed by the equation and limitation of taxation in raising revenue to defray their ordinary expenses, as provided in Art. 5 of the Constitution  But in raising revenue to discharge any debt, or other obligation they may contract or assume, as allowed by section 7 of Art. 7, they must be governed by and observe the method of taxation prescribed and established by that article. And other municipal corporations must be governed by that article, as to all taxes they may have authority or occasion to levy.   This is so, because that article requires that "all taxes levied by any county, city, town or township shall be uniform and *ad valorem* upon all property in the same, except property exempted by this Constitution."   It is insisted, however, in this connection, th it the last recited provision simply establishes the *method* of assessing property for taxation, and that it does not intend or purport to designate the subjects of taxation; that Art. 5, §§ 1 and 3, estab-

lishes what shall be such subjects in all cases, and certainly by municipal corporations.  This is a misapprehension. Because, as we have already seen, the last cited *Article* does not mention or apply to municipal corporations—does not mention or refer to them, except counties as to their *ordinary* expenses; nor does it purport, in terms or just implication, to prescribe and designate the subjects of taxation for purposes other than such as are mentioned and specified therein. It seems to us very clear that the last recited clause does not, nor was it intended, simply to es'ablish the *method* of assessing property for taxation.  It as well and further designates what shall be the subject of such taxation, to-wit, "All property in the  *  *  *  county, city, town or township."  It did and does not further provide for the levy of the capitation tax.  If the purpose was simply to establish a method of assessing property, the appropriate phraseology would be, "All property shall be taxed by a uniform rule and *ad valorem*."  It was not necessary to designate the *situs* of the property.

· Section 6 of Art. 7 (now abrogated) reflects some light upon the meaning of the clause under consideration.  It provides that "the Township Board of Trustees shall assess the taxable property of their township and make return to the County Commissioners for revision, as may be prescribed by law."  No provision was made in that, or any connection, for listing and reporting to the County Commissioners the names of persons subject to capitation tax.  Why such omission, if it were intended to levy the capitation tax for municipal corporation purposes?  Such omission is the more significant, as section 6 of Art. 5 provides that "the taxes levied by the Commissioners of the several counties for *county purposes* shall be levied in like manner with the State taxes," &c. This obviously implies levying taxes for ordinary county purposes, though special, including the capitation tax.  No such or like provision appears in Art. 7.  This is singular, if the

purpose was in the last-named *article* to provide for the capitation tax. Moreover, if *Art. 5* was intended to have general application and to include municipal corporations, as contended, and if section 9 of Art. 7 was intended simply to provide a method of assessment of property for taxation, as insisted, then the latter provision is unnecessary and nugatory, because such *method* of assessment is, in effect, provided in section 3 of Art. 5. It is not to be presumed that a section of the Constitution, and especially one so distinctive, was intended to serve no purpose. It must be interpreted as designating the *subject* of taxation upon which taxes shall be levied for municipal purposes. Moreover, the Constitution is a solemn instrument of the highest dignity and importance. It is intended that the whole, and every article, part and clause thereof, shall have effect in all proper connections and relations for the purposes expressed and intended therein. Its provisions are not presumed or intended to be inoperative or impracticable, nor must they be so taken and treated. On the contrary, they must receive such interpretation as will give them, each and all, practical effect, if this can be done. Now, the equation of taxation referred to, and on which the appellees rely in support of their view, necessarily implies *limitation* of taxation. If such equation and limitation are intended to and must be applied generally as to taxes levied, including those to meet the ordinary expenses and purposes of the State and counties, and also the like ordinary expenses of municipal corporations, then the provision (Art. 7, § 7), allowing the latter to contract debts, pledge their faith and loan their credit, is practically inoperative and nugatory, because, in such case, the subjects of taxation (property and polls) in the State are inadequate to allow the levy of taxes for any such last-mentioned purpose. This was so at and before the time of the adoption of the Constitution, and has been so ever since that time. This certainly appears from many statutory enactments, the

legislative and financial history of the State, and as well from common knowledge of the affairs of the State, its resources, wealth and population. Indeed, such equation and limitation have scarcely allowed a levy of taxes adequate to meet the ordinary expenses of the State and counties, and it is altogether probable that it was not intended to apply to municipal corporations. This view is strengthened by Art. 8, § 4, which provides that " it shall be the duty of the Legislature to provide for the organization of cities, towns and incorporated villages, and to *restrict their power of taxation,* assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessments and in contracting debts by such municipal corporation." This section, taken in connection with Art. 7, of which it is in effect a part, makes manifest the purpose to give the Legislature control of the subject of municipal taxation, except as to the method and subject of taxation. It is not at all probable that its purpose was to give the Legislature control of such taxation simply within the equation and limitation of taxation as established in Art. 5, § 1. For such purpose, as we have seen, it would be nugatory.

We are, therefore, of opinion: 1. That the equation and limitation of taxation established by the Constitution (Art. 5, § 1) applies only to taxes levied for the ordinary purposes of the State and counties; and as to levies of taxes for such purposes it must be observed. 2. That a county, when it contracts a debt, pledges its faith or loans its credit, as allowed by Art. 7, § 7, must levy taxes necessary to raise revenue for such purposes upon all the property in the same, except such property as is exempted from taxation. 3. That a city, town, or other municipal corporation, " for the necessary expenses" thereof, must levy taxes upon all the property in the same, with the like exception. 4. That a city, town, or other municipal corporation, when it contracts a debt, pledges its faith or loans its credit, as allowed by Art.

7, § 7, must levy taxes upon all the property in the same, with the like exception. 5. That the Constitution does not *require* that a capitation tax shall be levied except when taxes are levied for the ordinary purposes of the State and counties. Such ordinary purposes embrace the case where County Commissioners levy more than the double of the State tax "for a special purpose, with the approval of the General Assembly," as provided in Art. 5, § 6. Such "special purpose" must be of the ordinary purposes of the county, such as that to build a court-house, a public jail, or an important bridge, as to which it may be deemed necessary to create a special fund.

We do not mean to say that the General Assembly has not power to require a capitation tax to be levied when taxes are levied upon property. We simply decide that it is not essential that it do so. We are not called upon here to decide that it may not require a capitation tax to be levied. It seems that it may. The power to do so has been frequently exercised.

Hence, we conclude that the statute in question is not void because it failed to require a capitation tax to be levied in observance of Art. 5, § 1 of the Constitution, or at all. A capitation tax was not necessary to the validity of the statute.

We think that the interpretation we have thus given the several articles and clauses of the Constitution bearing upon the important question raised by the appellees, is the true one, indeed, the only one consistent with their phraseology, terms and purposes, and that renders the whole in large measure harmonious. We know that it has been said, *obiter*, in several cases, that the *equation and limitation* of taxation referred to above must be observed in levying taxes for municipal purposes; but it has not been so decided, certainly not expressly decided, nor can it be, in our judgment, without defeating the true intent reasonably appearing.

The plaintiffs' counsel further contended that the township mentioned in the pleading had no corporate existence, and therefore the statute as to it is void. This contention is unfounded. Townships have a distinctive existence for specified purposes created by statute (*The Code,* § 707, pars. 13 and 14), and the Legislature may confer upon and invest them with corporate powers for a particular pertinent purpose, as to subscribe for the capital stock of a railroad company, to issue its bonds to raise money to pay for the same, to levy taxes upon the property of the tax-payers therein to pay the accruing interest upon such bonds, and to pay the same at their maturity. And there is no reason why the statute may not require the County Commissioners to order the election, ascertain the result thereof, issue bonds and levy taxes in the township, as was done in this case. Indeed, such provision was convenient and expedient. The townships are constituent parts of the county organization, and county officers may well be charged with duties and authority in respect to debts they may be allowed by statute to contract. It is settled that townships may subscribe for the capital stock of railroad companies when empowered for that purpose by statute. *Wood* v. *Oxford,* 97 N. C., 227; *Brown* v. *Commissioners* 100 N. C., 92, and cases there cited.

The plaintiffs failed to allege a cause of action, and, therefore, the Court should have denied the motion for an injunction pending the action. To entitle the plaintiffs to relief by injunction pending the action, they must allege a cause of action that entitles them to have the same, whatever may be the result of the trial upon the merits. *Harrison* v. *Bray,* 92 N. C., 488; *Moore* v. *Mining Co.,* 104 N. C., 534; *Railroad* v. *Railroad, ibid.,* 658.

There is error. Let this opinion be certified to the Superior Court according to law. It is so ordered.

Error.