. SOUTHERN RAILWAY COMPANY v. BOARD OF COMMIS-
SIONERS OF BUNCOMBE COUNTY.

(Filed 25 May, 1908.)

**Taxation—No Direction of Levy of Poll Tax—No Repealing
Statute.**

The only difference between the facts found in this case and
those in the case immediately preceding being that the statute
in this case does not in express terms direct that a poll tax
be levied, and that there is no repealing act directing the levy
of a poll tax or the levying of such tax beyond the sum of $2:
*Held,* the digest in that case is fully applicable to this one on
all points.

ACTION heard before *Moore, J.,* by consent, at chambers in
Asheville, 24 March, 1908, from MECKLENBURG.

Defendant appealed.

*W. B. Rodman* and *A. B. Andrews, Jr.,* for plaintiff.
*C. A. Webb* for defendant.

CONNOR, J. This action is in many essential respects simi-
lar to the case of the same plaintiff against the Commissioners
of Mecklenburg County. His Honor found the following
facts: Plaintiff owns property in Buncombe County valued
for taxation at the sum of $1,458,353. At their meeting in
June, 1907, the defendant commissioners levied upon each
$100 valuation of property in said county the following
taxes:

| | |
|---|---|
| For State | .21 |
| For pensions | .04 |
| For schools | .18 |
| For county, general purposes | .23⅔ |
| | .66⅔ |

That at the same time they levied on each tax-
able poll ......................... $2.00

That at .the same time they levied on each
$100 in valuation on property:

Bridges and roads (Acts 1905, ch. 411, sec-
tion 2)............................... .15

Interest and sinking fund (Acts 1901, ch.
598; Acts 1905, ch. 751; Acts 1893, ch.
172) ............................... .18⅓
_____

33⅓

They levied no other or further tax on the poll than the $2.

The county of Buncombe, pursuant to various acts of the
General Assembly, has issued and has now outstanding:

$50,000 courthouse bonds.......... 5      per cent.
  50,000 funding bonds........... 5        "
  20,000 county home bonds....... 4½       "
  98,000 funding bonds........... 5        "

For the purpose of paying the annual interest upon and
retiring at maturity the said bonds the sum of $27,299 should
be levied. The levy of 18⅓ cents, levied for that purpose,
without any tax on the polls, will yield $35,235.37. There
are other bonds outstanding amounting to $60,000, the in-
terest and principal at maturity of which are provided for out
of the levy for general purposes.

The commissioners have not laid aside any sinking fund
out of levies heretofore made, but the taxes amount to much
more than the interest, levied pursuant to the several acts
authorizing the levies, after paying the annual interest upon
the bonds, for the purpose of paying the ordinary expenses
of the county. It is the intention of the said board, out
of the levy for the year 1907, to lay aside the excess, after
paying the interest, to create a sinking fund. Several of the·
acts pursuant to which the levy is made provide for a levy on
the poll of a tax corresponding to the tax on the property.
Several of them do not. The defendant board of commis-
sioners, at the time of levying said taxes, were advised and

believed that they had no right, under the Constitution, Art.
V, sec. 1, and all the acts mentioned in the complaint, to a
capitation tax in excess of $2.

His Honor, being of the opinion that the levy of the several
taxes set out on the property, without the levy of a correspond-
ing tax upon taxable polls, in Buncombe County, was illegal
and void, and that the taxes charged to the plaintiff are for that
reason illegal, made an order continuing the injunction to the
hearing.    Defendant board of commissioners appealed.    The
only difference between the facts found by his Honor in this
case, other than amounts, etc., consists in the fact that the act
of 1893, ch. 172, pursuant to which the issue of $98,000
5 per cent. "funding bonds" were issued, does not in express
terms direct that a poll tax be levied.    The other acts do so
direct.    There is no statute repealing any of the provisions
of said acts directing the levy of a poll tax or prohibiting the
levy of such tax beyond the sum of $2, as in the Mecklenburg
case.    The two cases were argued together, and, except in the
particulars named, it is conceded there is no substantial dif-
ference between them.    The question, therefore, upon which
the plaintiff's right to maintain its action depends is whether
section 1, Article V, makes it imperative upon the Legislature
to impose a poll tax in excess of $2, when a property tax in
excess of the same amount is levied upon property for any
and all purposes, or whether the words "that the State and
county capitation tax combined shall never exceed $2 on the
head" prohibit a poll tax in excess of that sum for any pur-
pose.    We have given the subject our best thought and inves-
tigation in the Mecklenburg case, and reached the conclusion
therein announced.    We note that in defendant's answer it is
alleged that the city of Asheville levies a tax on the poll of
$4.50, thus making the poll tax on each citizen liable therefor
in said city $6.50, or, as contended by plaintiff, $7.50.    This
is significant of the operation of the Constitution, when the
imperative command that the capitation tax shall never ex-

ceed $2 on the head is disregarded. We also note that his Honor finds that the defendant is levying for the payment of interest on the bonds an amount in excess thereof and applying it to general expenses. This cannot be permitted. One of the beneficent effects of increase in wealth and in valuation for taxation should be the lowering of the rate. Any taxation beyond the reasonable necessity or for any other purpose than that for which it is levied is oppression. We have indicated in the opinion in the Mecklenburg case the proper course to be pursued in this respect. The order of his Honor continuing the injunction must be

Reversed.

CLARK, C. J., concurring: The constitutional limitation upon taxation is 66⅔ cents on the $100 for State and county purposes. Its application has often been thus summarized by this Court:

(*a*) For necessary expenses the county commissioners may levy up to the constitutional limitation without a vote of the people or legislative permission.

(*b*) For necessary expenses the county commissioners may exceed the constitutional limitation by special legislative authority without a vote of the people. Cons., Art. V, sec. 6.

(*c*) For other purposes than necessary expenses a tax cannot be levied either within or in excess of the constitutional limitation except by a vote of the people under special legislative authority. Cons., Art. VII, sec. 7.

The above summary is to be found in *Tate v. Commissioners,* 122 N. C., 815; *Herring v. Dixon, ib.,* 424; *Smathers v. Commissioners,* 125 N. C., 488; *Colton Mills v. Waxhaw,* 130 N. C., 298.

As to the *equation* of taxation: The Constitution, Art. V, sec. 1, provides that the General Assembly shall levy a capitation tax on every male inhabitant over twenty-one and under fifty years of age "which shall be equal to the tax on property valued at $300 in cash," but couples it immediately with this

restriction, in the same section: "The State and county capitation tax combined shall *never* exceed $2 on the head." Section 2 provides that the State and county capitation tax shall be applied to education and the poor—not more than one-fourth thereof to the latter.

Section 6 of the same article of the Constitution provides that county taxes "shall be levied in like manner with the State taxes, and shall never exceed double the State tax," with the exception, "except for a special purpose and with the special approval of the General Assembly." But for the use of the words *"in like manner,"* no one could contend that the equation applied to county taxes at all, or, indeed, that the counties are required to levy a poll tax under any circumstances to any amount. As those words refer us back to section 1 of Article V, so the exception applies both to "in like manner" (the equation) and to exceeding "double the State tax"; *i. e.,* when taxes are levied "for a special purpose and with the special approval of the General Assembly," both the equation and the prohibition upon the county to exceed double the State tax are to be disregarded. That the equation does not apply when the constitutional limitation is exceeded by legislative authority, the very point now presented, was discussed and was clearly held by *Merrimon, C. J.,* in *Jones v. Commissioners,* 107 N. C., 248, and it is cited for that ruling, 27 A. & E. Enc. (2 Ed.), 634.

The language of the Constitution, "The State and county capitation shall *never* exceed $2 on the head," is imperative and uncompromising. There is no exception to this anywhere. The people so understood it when they adopted the constitutional amendment in 1900 requiring the payment of poll tax as a requisite to suffrage.

The poll tax has never been favored by economists. Judge Cooley (Taxation, 28) says: "They are not a common resort in modern times, and only in a few cases could they be either just or politic." The universal poll tax laid under the later

Roman Empire is said by Hume to have been one of the chief causes of its decay and final overthrow.   Wells Taxation, 331. A poll tax was first levied in England in 1377 and was the cause of the famous Rebellion of Wat Tyler in 1381.   Afterwards it was made a graduated tax, graded according to the amount of property and rank of each person, and bachelors and widowers being specially taxed.   But even as a graduated tax the poll tax was last enacted in England in 1689 and was finally repealed in 1698, more than two centuries ago, and "henceforth this form of tax passed into the list of taxes tried and never again to be imposed in England.   What minister," said Henry Fox, in 1748, "would presume again to suggest the hated hearth money of the Stuarts or the poll taxes of the reign of William III. ?"

In this country there is, as in England, no poll tax levied by the State in Connecticut, Delaware, Florida, Illinois, Iowa, Idaho, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, South Dakota, Vermont, Wyoming and Utah—twenty-two States—though in some of these there is a small poll tax laid by local authorities in aid of schools or roads.

In Alabama, Arizona, Arkansas, California, Georgia, Indiana, Louisiana, Mississippi, Texas, Virginia and West Virginia the poll tax is by the Constitution appropriated to the public schools, and in most of them it does not exceed $1.

In all our neighbor States, Georgia, South Carolina, Tennessee, Virginia and West Virginia, the poll tax is limited by the Constitution to $1, as is also the case in Arkansas and Colorado.

Without going further into the details as to the other States, none of them present the condition of many of our towns, in some of which the State, county and municipal poll tax combined have reached the oppressive figure of $6, $7 and even $8.   This is criticised by Hollander on State Taxation, 104,

who points out that in this State, in which 60 per cent. of the taxes are paid by persons owning less than $500, the result is that the small taxpayer, if he pays a poll tax also, pays nearly double the rate of the larger taxpayers.

Up to about 1850 the poll tax raised about half the State taxes in North Carolina.   In 1827, for instance, when the entire taxes collected for our simple State government of that day were less than $60,000, more revenue was raised from polls than from property, the tax on lands and town lots yielding $25,948.41, while the poll tax brought in $27,948.41. The poll tax was largely paid on slaves, which property paid no other tax.   In those times there were no insane asylums, public schools, schools for deaf and dumb and blind, nor interest on public debt, and other matters now requiring public expenditures.   When the insane asylum was established a part of the poll tax was appropriated to that purpose.

With the development of the State and the increased demand for revenue to defray the cost of schools, public institutions and the like, it was seen that the taxation on polls might become excessive.   The history of taxation in this State, the fact that a large part of the State revenues had been previously raised by the poll tax, the growing necessity for still greater revenues, which might make the poll tax oppressive unless restricted, the abandonment altogether of any poll tax in England and in many of our sister States and its restriction in others—all these combine to show why it was that the Convention of 1868 provided that "The State and county capitation tax combined shall never exceed $2 on the head." *Never*—that is to say, "under no circumstances and at no time" shall it exceed that sum.

This does not in any wise affect the holders of bonds issued under acts providing for a poll tax in equation with the property tax, for they took the bonds with a notice in the Constitution (Art. V, sec. 2) : "The proceeds of the State and county capitation tax shall be applied to the purposes of education

and the support of the poor." If, therefore, the poll tax were collected under those acts, the proceeds would go to those purposes only, and if eliminated (where above $2) there is no diminution of the fund applicable to payment of the principal or interest of the bonds.

It is peculiarly inappropriate for the plaintiff to institute this action to compel the payment of a head tax in excess of the $2 per head by the citizens of Buncombe, seeing that, as appears by the record in this case, the taxes collected out of the property in that county to pay the interest on the bonds practically donated to aid in building the railroad owned by the plaintiff amount to about as much as the entire taxes paid by the plaintiff, thus making all the great property of the plaintiff in that county a noncontributor to the expenses of government and the cost of protecting and safeguarding its property.