*142
 
 Hash, 0. J.
 

 Hie question- in this case arises, under tlie private Act of 1852, ch. 2, sec. 5, whereby the commissioners of Hewberne were authorised to subscribe for five hundred shares in the Heuse River navigation Company, for the use of the town. The commissioners, under the authority thus conferred, made the subscription, and under the authority of the same Act, executed their bonds for the amount so subscribed for, and proceeded to levy a tax upon the citizens of Hew-berne who were freeholders in the town, to pay the interest upon their bonds, and for their ultimate discharge.
 

 The plaintiff who is one of the real-property-holders in the town, and a corporator, filed this bill to enjoin the collection of the tax imposed by the commissioners; upon the ground that the Act of 1852 was unconstitutional; and if constitutional, was never accepted by the corporators.' ■ The defendants demurred.
 

 Upon opening the case at the last term, an able and interesting argument in support of the demurrer was addressed to us. Ho counsel appeared on the part of the plaintiff. The principle involved was too important to be decided without a fnll argument. The plaintiff had no right to throw such a question before us and leave us without the aid of counsel, lie is now represented, and much time and labor are spared us.
 

 The counsel for the plaintiff having satisfied himself, as a constitutional lawyer, upon the principle chiefly litigated, has not sought to envelope the case in dotibt and uncertainty, fvhich-his own strong mind did not entertain, but has abandoned the constitutional question, admitting the power of the legislature to pass the Act as too strongly fortified, both by authority and reason, to be now doubted. He brought before us most of the coses which have been decided in the different States of the Union. We have considered these authorities with care, and find that they uniformly decide the question in favor of the constitutional power of the legislature to pass such an Act. In Tennessee, Ohio, Yirginia, Pennsylvania and Massachusetts, such has been the result. See the case of the
 
 Louisville and Nashville R. R. Co.
 
 against
 
 the County
 
 
 *143
 

 Court of Davidson county,
 
 in Tennessee; of
 
 Griffiths and others
 
 against
 
 the Commissioners of Crawford county and others,
 
 in Ohio; that of
 
 Goodin
 
 v.
 
 Crump,
 
 in Virginia, 8 Leigh’s Rep. 120; the case reported in the February number, 1854, of Livingston’s Law Journal, from Pennsylvania, and that of
 
 Adams
 
 and
 
 Howe,
 
 14 Mass. Rep. 345. However these may differ from the one before ns in some particulars, they all concnr in the leading principle of the constitutional power in the legislature to authorise such a subscription. Many other cases are referred to in the argument of the defendants’ counsel: we deem the above sufficient for our purpose.
 

 In the very able opinion of Oliief-Jusfice IIitciioock, of the Supreme Court of Ohio, filed in the case of
 
 Griffiths and others
 
 against
 
 the Commissioners of Crawford county and others,
 
 to be found in the appendix to the 20fh vol. of Ohio Reports, all the cases on the subject are cited and commented on, and he decides in favor of the constitutional power, and he remarks, “if decided cases are to have any influence, they (those he had cited) are sufficient. These cases all sustain the proposition that the legislature has the constitutional power to authorise municipal corporations to subscribe for rail-road stock, though not passing through or terminating in the town, or in its immediate neighborhood.” As this principle has been conceded, we'deem it unnecessary to enter into an elaborate investigation of the cases cited; but resting on those cases, wo are of opinion that the Act of 1852 is within the constitutional power of the Legislature.
 

 Passing by this point then, as settled, we will proceed to notice the ground upon which the argument of the counsel of the plaintiff is rested. He insists that the Act of 1852 is an amendment of the charter of the town of Hewberne, and is inoperative until accepted by the corporation, which has never been done. The town of Howberne was incorporated in the year 1723, with the usual corporate powers. An amendatory Act passed in 1779, and by the 13th sec. it is enacted
 
 “
 
 that the
 
 Commissioners
 
 of the town of Newberne shall be and
 
 *144
 
 hereby are incorporated into a body politic and corporate by the name of the commissioners of Newberne, and by that name have annual succession, &c., and a common seal.” The Act of 1852 enlarges the power of the commissioners, so as to enable them to subscribe for five hundred shares in the Neuse River Navigation Company. By the ’first section it is enacted “ that it shall and may be .lawful for the commissioners of the town of Newberne, and they are hereby authorised and empowered to subscribe for five, hundred shares of the capital stock of the Neuse River Navigation Company, to be held by the commissioners of the town of Newberne, for the use and benefit of said town.” The second section authorises the commissioners “ to make, execute and deliver their bonds for the payment of such sums of money, &c., with the
 
 corporate seal of the commissioners aforesaAdP
 
 The fifth section enacts; “ that to provide for the payment of the bonds issued by virtue of the provisions of this Act, and to provide for the payment of the interest accruing on the same, it shall be lawful for the
 
 commissioner's
 
 of the town of Newberne, and they are hereby authorised and empowered, and required, from year to year, and every year, to assess, levy and collect from the real estate within the limits of the town of Newberne such an amount of taxes, &e., as shall be necessary, &c.”
 

 The power to make this subscription did not exist in the corporation of Newberne, by force of the'original charter, or by any of the intermediate acts amendatory of it; it required legislative aid to enable them to do so, and by the private Act of 1852 it was, that the power was conferred. Whether the legislature acted wisely or not, is a question with which we have nothing to do. The power being admitted, its abuse cannot affect it; that must be for the legislative consideration. It is sufficient that the Judiciary claim to sit in judgment upon the constitutional power of the legislature to act in a given Case; it would be rank usurpation for us to enquire into the wisdom or propriety of thej$ acts.
 

 It is admitted that this being a political corporation, the Legislature acting within the pale of their constitutional pow
 
 *145
 
 ers, may command an act to be done, by the commissioners, wliicli would be imperative upon them and be enforced through the action of the Judiciary, and that this Act is 'not of that character but is permissive. In passing this Act, the Legislature appears to have been perfe&tiy'aware of this distinction.
 

 In the first clause, which confers on the commissioners this 3row power, the language is, “ it shall and may he lawful, &c.” Whether the subscription should be made, is loft to the. discretion of the commissioners, acting for the corporators, or to the corporators themselves. But having made the subscription for the stock and given their bonds for the money to be paid, it is no longer left to the discretion of the commissioners or of the corporators to say whether they should be paid or not. Acting upon the wholesome principle that a public body should never incur a debt wihout at the same time providing the'means for its discharge, the Legislature pass, in the fifth clause of the Act, from the
 
 permissive
 
 to the
 
 imfvnctme.
 
 The commissioners are not only authorised, but reqiuired, which in legislative language is equivalent to commanded, to levy a yearly tax, t-o pay the yearly accruing interest, and to provide a fund for the final discharge of the debt. After the contraction of the debt there is no discretion left in the commissioners or the corporators whether or not they will pay the bonds or the interest, in the hands of the holders, their payment would be enforced by the Courts by a
 
 mandamus
 
 commanding them to levy a tax for that purpose.
 
 Hill
 
 v. Bonner, Busb. 257.
 
 State
 
 v.
 
 Justices of Moore,
 
 2 Ired. 430.
 

 In admitting the constitutional power of the Legislature to pass the Act, it was conceded that they had a right to direct the commissioners as to the species of property out of which it should be raised. This is certainly true. By the constitution, the taxing power is vested in the Legislature; nor do we know any limit to that power, either as to the amount to be levied, or the subjects out of which it is to be raised. The whole property of the citizens of the State, when under no constitutional protection, be it what it may, is liable to be taxed, and at each session of the Legislature we see the ingenuity of
 
 *146
 
 tlie members taxed to discover new sources of revenue. The exigencies of the State must be supplied — its obligations redeemed. With the power to authorise the subscription to the stock, was conferred the power to lay the tax necessary to redeem the obligations of the corporation, so incurred, and there was a manifest propriety in selecting the realty within the town as the source from which the fund was to be derived.
 
 It
 
 is the interest most to be promoted of any other in the town, by the proposed subscription. Situated as Uewberne is, in the fork of Meuse and Trent Rivers, and cut off from nearly all communication with the interior of the State, except through the aid of the former, its improvement in every interest is manifestly connected with the improvement of the river Meuse, and it is a matter of little importance, in this view of the case, that the improvement will commence ten miles above the town.
 
 Staples
 
 v.
 
 the
 
 Mayor, &c., Livingston’s Law Magazine, Feb. No., 1854. But, as before remarked, this is a question to be decided by those immediately interested, who are much more competent to decide it than we can be.
 

 It was urged in the argument before ns on the part of the plaintiff, that as this is a power in the Legislature susceptible of great abuse, when an acceptance by the corporation is necessary to give life to the Act, the Court ought to require the clearest evidence of such acceptance. This proposition, in the main, we accede to. Messrs. Angel and Ames, in their valuable work on corporations, 5. 83, in remarking upon an acceptance by a corporation, when it is necessary, say:
 
 “
 
 the question whether it has been accepted will of course in a measure depend upon the circumstances under which it. was granted.” In the case,
 
 the Charles River Bridge
 
 against
 
 the Warren
 
 Bridge, 7th Pickering, 344, it was held that where a grant was beneficial to a corporation, an acceptance may be presumed. It is not essential to the taking effect of a charter that the acceptance should appear on the records of the cor
 
 poration.
 
 —Russell v. McClelland, 14 Pick. 53. The accept-' anee, for some purposes, may always be inferred from the exercise of -corporate powers under it. — Angel and Ames, 15.
 
 *147
 
 Let us now examine tlie case with those authorities in view.
 

 The hill which contains the statement of the plaintiff is drawn in a manner highly creditable to the plaintiff and liis draughtsman. There is no attempt to smother up or evade, or keep hack the whole truth, hut its statement is plain and to the purpose. It states, “ that a short time before the session of the Legislature at which the said Act, to enlarge the powers of the commissioners of the town of Newberne, was passed, an election was held at the court-house in the town, after due advertisement of the time and place of holding said election and of the purposes of it, to take the sense of the owners of real estate in said town, whether they wished the Legislature to empower the commissioners of said town to take $50,000 worth of stock in said Neuse Eiver Navigation Company, and that though there was a considerable majority of the votes polled, at such election, in favor of the Legislature’s empowering the commissioners to make such subscription, yet there was a considerable minority vote against it.” It then sets forth, “ that in all elections of commissioners of New-berne since the passage of said Act, the question of the subscription aforesaid by the commissioners of Newberne was made a test question, and there was one set of candidates who were avowedly and notoriously opposed to the subscription, and another set of candidates avowedly and notoriously in favor of the subscription, and that all but one of the candidates so in favor of the subscription, were each year elected.” It appears then, from the bill, that the Act 'of 1852 was not sprung upon the real-property-holders in tire town of New-berne. They were notified that such an application would be made to the General Assembly at its next ensuing session,
 
 u
 
 and they were called on to vote for, or against it. A majority did sanction the application. In two subsequent elections of commissioners of the town, the same question was submitted to the voters, and with the same results. It is alleged however, both in the bill and the argument here, that the first election was called by the commissioners without any authority from the Legislature to do so. Be it so. The important
 
 *148
 
 point to ascertain, is, what were the views and wishes of the rcal-property-holders, and it is not a matter of very high importance how it is ascertained, provided it is ascertained satisfactorily. So, what was determined on hy the,votors at the first election was ratified and confirmed on two subsequent elections when the question was fairly brought before the electors of the town. In what other way could the sense of the corporators be ascertained ? What other mode can be suggested, better calculated for the ascertainment of their wishes on the subject? hior is it of any importance that the vote was not unanimous upon either of the occasions. The Legislature may incorporate, a town or enlarge a charter previously granted, with the consent of a majority of the corpo-rators, and if a number less than the whole will suffice, who is to decide upon
 
 thaphos
 
 or
 
 mimos ?
 
 A charter accepted by a majority is binding upon all the corporators, so far as its validity is
 
 concerned.
 
 —Goodin v.
 
 Crump,
 
 8th Leigh’s Rep. 155.
 
 Louisville and Nashville R. R. Co.
 
 v.
 
 the County Court of Davidson county,
 
 Tennessee.
 

 The Act of 1852 is silent as to the talking the sense of the corporators upon the acceptance of the charter. If it had directed the taking the sense of the corporators in any particular mode, it would have been necessary to its validity, that such mode should have been pursued; but failing to do so, that assent or acceptance may be gathered by the Court from any act or acts of the corporators, as such, which can satisfy it of the fact. Believing as we do that the Legislature had the constitutional right to pass the Act of 1852, and that it was accepted as an amended charter of the town of Hewb erne, by a majority of the corporators, we are of opinion that the demurrer be sustained and the bill dismissed.
 

 BeR CuRIAji. Decree accordingly.