SMITH v. SCHOOL TRUSTEES.

(Filed April 17, 1906).

*Schools and School Districts—Elections—Registration of Voters—Constitutional Law—Legislature—Taxation . by School District—Disposition of School Funds—Discrimination Between Races—Municipal Corporations.*

1. An election held pursuant to chapter 204, Pr. Acts. 1905, which creates a graded school district which includes portions only of two white and two colored districts as established by. the county board of education, and which includes portions of the territory of two voting precincts, is not invalid because no new registration was ordered for the entire electorate of the new district where the act directs that the election be held under the laws governing elections for cities and towns, chapter 514, Laws of 1899, and chapter 750, Laws of 1901.

2. Chapter 204, Pr. Acts 1905, creating a graded school district and authorizing its trustees to levy a tax and issue bonds when the act is approved by a majority of the qualified voters is a valid exercise of legislative authority.

3. The Legislature can create a specific school district within the precincts of a county, incorporate its controlling authorities, confer upon them certain governmental· powers, and when accepted and sanctioned by a vote of the qualified electors within the prescribed territory as required by our Constitution, Article VII, section 7, may delegate to such authorities power to levy a tax and issue bonds in furtherance of the corporate purpose.

4. School districts are public *quasi*-corporations, included in the term municipal corporations as used in Article VII, section 7, of our Constitution, and so come within the express provisions of section 7, that "No county, city, town or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, etc.; nor shall any tax be levied, etc., unless by a vote of the majority of the qualified voters therein." And the principle of uniformity is established and required by section 9 of this article.

5. Section 12 of chapter 204, Pr. Acts of 1905, which provides that the trustees shall dispose of the school fund to be realized under the act as to them may seem just, does not confer an arbitrary discretion, but the same must be used as directed and required by the Constitution and in the light of the decision of *Lowery v. School Trustees*, 140 N. C., p. 33.

ACTION by Smith and Jenkins against the Board of Trustees of Robersonville Graded School, heard by *Judge Chas. M. Cooke,* at December Term, 1905, of the Superior Court of MARTIN.

This was an action to restrain the authorities of a public school district, known as Robersonville Graded School District, from issuing bonds and levying a tax under and by virtue of an act of the General Assembly (Pr. Acts 1905, chapter 204,) and an election held pursuant to said act.

By consent, duly entered, a jury trial was waived and the cause was tried and determined by the judge presiding.

The act creates a graded school district of defined boundaries so as to include the town of Robersonville and certain adjacent territory; establishes a board of trustees to hold office for a definite period; fills same by appointment for the first term and provides that the successors of these officers shall be elected by a vote of the qualified voters within the district as their respective terms expire, etc., and confers power on said board as follows:

Sec. 3. That the board of trustees hereby created and their successors in office, shall be a body politic and corporate by the name and style of the Board of Trustees of the Robersonville Graded School, and by that name shall be capable of receiving gifts and grants, purchasing and holding personal and real estate, selling and mortgaging and transferring the same for school purposes, and of prosecuting and defending suits for or against the corporation hereby created. Conveyances to said trustees shall be to them and their successors in office.

Sec. 4. That said board of trustees shall have entire and exclusive control of the graded schools and all public school property in said Robersonville district, and shall prescribe rules and regulations for their own government not inconsistent with the provisions of this act; shall employ and fix compensation of officers and teachers annually, subject to removal by said board; shall make an accurate census of the school population of the district as required by the general law of the State, and do all other lawful acts proper to the management of said school, provided that all children resident in said district between the ages of six and twenty-one years shall be admitted into said school free of tuition charges, and those desiring to be admitted as pay students may be admitted upon such terms as the board may direct.

Sec. 6. That for the purpose of this act, the board of trustees of said district shall, and they are hereby authorized and empowered, beginning with the fiscal year, June 1, 1905, and annually thereafter, to levy and cause to be collected a particular tax on all taxable property and polls in said district, provided said particular tax shall not exceed thirty-three and one-third cents on the one hundred dollars valuation of all taxable property in said district and one dollar on each taxable poll in said district, provided that the valuation of all property in said district shall be the same as that at which it is assessed for county and State purposes, provided that the taxes levied under this act shall be due, payable and collectible in like time and manner as are the taxes for county and State purposes.

Section 7 confers power to appoint a tax collector, etc.

Sec. 8. That the board of trustees herein provided shall be and are hereby authorized and empowered to issue bonds of said graded school to an amount not exceeding three thousand dollars of such denomination and of such proportion as said board of trustees shall deem advisable, bearing interest from date thereof at a rate not exceeding six per cent per

annum, with interest coupons attached, payable annually, such bonds to be of such form and tenor, and transferrable in such way, and the principal thereof payable or redeemable at such time or times not exceeding twenty years from date thereof, as said board of trustees may determine, provided that the said board of trustees shall issue bonds at such time or times and in such amounts as may be required to meet the expenditures hereinafter provided for in section 9 of this act.

The act further provides that the taxes collected pursuant to the act shall be applied to payment of said bonds and interest thereon and the necessary expenses of the schools within the district and that proper schools shall be established, etc. The act then directs that an election be held by the qualified voters of the district under the law governing the elections in cities and towns, and if a majority of such qualified voters shall vote for schools, then the provisions of the act shall be in full force and effect. In addition to the terms and provisions of the act referred to, the court finds the following additional facts as pertinent to the inquiry:

1. "That the defendants had the district surveyed and laid off according to the description in said private act, and within its boundaries are included portions only of white school districts numbers 23 and 34 and portions of colored districts numbers 14 and 23, as established by the board of education of the county. The whole town of Robersonville is in the district.

2. That the board of trustees ordered an election, appointed a registrar and the judges of election, but did not order a new registration; that the district included portions of the territory of Robersonville voting precinct and of Gold Point voting precinct. That the registrar gave the proper notice of the time for registering the votes. That he referred to the registration books in Robersonville precinct and Gold Point precinct and copied from these books into

his registration books the names of all the registered voters who were then residing within the boundaries of said school district, and registered anew those persons entitled to register residing in the said district, whose names did not appear on the old registration books of said voting precincts. There were 14 new registrations. That at the election 136 votes were cast, of which 96 were for schools and 40 were against schools. I further find that 96 was more than a majority of the registered voters, as they were registered, for I find that the number of names registered was 181.

3. I further find that the said trustees have levied a tax of 33 1-3 cents on the $100 worth of property and $1 on the poll and that they are proceeding to have the same collected, and that the plaintiffs are residents and property owners and tax payers in said district.

4. I further find that the trustees are arranging to issue $3,000 of bonds and that they propose to use $2,500 of the proceeds from the sale of said bonds to pay for a building for a graded school for the white race."

Upon said facts judgment was entered as follows:

"Upon the foregoing  *  *  *  I find as conclusions of law (1) That the defendants or such trustees had the right to authorize the election, but there should have been a new registration, and this failure makes the election void. (2) That the said trustees could not levy a tax, because it is against the Constitution of the State, and that the said act of the General Assembly authorizing them to levy a tax is unconstitutional and void.

It is therefore ordered and adjudged that the said trustees be enjoined from issuing the said bonds and from collecting any tax on the poll or property, because of the said levy made by them."

Thereupon defendants excepted and appealed.

*Gilliam & Gilliam* for the plaintiffs.
*H. W. Stubbs* and *Winston & Everett* for the defendants.

HOKE, J., after stating the case: It is not urged against this legislation that its acceptance was made to depend upon the vote of the people within the new school district. Such legislation has so often been sustained in this State that it is no longer an open question. *Cain v. Commissioners,* 86 N. C., 8. Nor is it suggested that any but those who were qualified voters of the territory took part in the election, nor that any who were such electors in the territory were denied registration. Plaintiffs rest their right to a stay of further proceedings under the act on two grounds: (1) That the election was invalid because no new registration was ordered for the entire electorate of the new district. (2) That the act is unconstitutional in that it delegates legislative power to defendant board. The court is of opinion that both positions should be resolved in favor of defendant. As to the first, the legislation bearing on the question is, we think, decisive against the plaintiffs. Section 15 of the act directs that the election be conducted under the laws governing the elections for cities and towns. The laws (by chapter 514, Laws 1899, and chapter 750, Laws 1901,) provide that a new registration may be ordered by the city or town authorities, but that unless this is required, the registrars appointed for the purpose shall be furnished with registration books, and after taking an oath for faithful performance of duty, shall revise the registration books of their wards or precincts so that such books shall show an accurate list of the electors previously registered and still residing therein, without requiring such electors to be registered anew, and then keep open the books at stated periods, in order that any new electors, not before registered, may be properly registered thereon. Here no new registration was required. The registrar and judges were duly appointed and the registrar revised the registration books of the precincts included in the designated territory, transcribed from these books the names of all registered voters who were still residing within the bounda-

ries of the school district, and registered anew those persons entitled to register and whose names did not appear on the old books. The clear intent of the statute is that unless a new registration is ordered, no electors within the territories should be required to re-register, and there has been a substantial compliance with the law. *DeBerry v. Nicholson,* 102 N. C., 465.

In support of the second position the plaintiffs contend that the power of taxation is a legislative power which cannot be delegated except to municipal corporations, quoting a clause from Cooley on Taxation as follows: "There is one clearly defined exception to this rule which is strictly in harmony with the general features of our political system, and it rests upon an implication of popular assent which is conclusive. This exception relates to the case of municipal corporations. Immemorial custom which tacitly or expressly has been incorporated in the several State Constitutions, has made these organizations necessary parts of the general machinery of government." The court is further referred to several decisions of this State construing acts which conferred this power on municipal corporations, and it is urged that thus far this has only been done in North Carolina in the cases of cities, towns and counties, the usual or ordinary political subdivisions of the State. It is true that the power of taxation is an inherent and essential attribute of sovereignty, which, under our system of government, is placed in the legislative department and that Mr. Cooley and other writers on the subject, in referring to it, say that it cannot be delegated except to municipal corporations. But in using the term "municipal corporations" in this connection, these writers do not use the word in its restricted sense of municipal corporations proper, confining it to cities and towns, but in a more enlarged and generally received acceptation, which includes municipal corporations technically so termed, and also public corporations created by the State for the purpose

of exercising defined and limited governmental functions in certain designated portions of the State's territory.

These last are termed by authors of approved excellence and decisions of authority, to be public *quasi* corporations and are said to include counties, townships, school districts and the like. Thus a recent writer, Abbott on Municipal Corporations, section 8, says: "Public *quasi* corporations are defined as 'subdivisions of the State's territory, such as counties, townships, school districts and the like, which are created by the Legislature for public purposes and without regard to the wishes of the inhabitants, are to be included in the class known as public *quasi* corporations.' They are, in essence, local branches of the State government, though clothed in a corporate form in order that they may the better perform the duties imposed upon them."

Smith's Modern Law Municipal Corporations, sections 8 and 9; Beach on Public Corporations, section 3; Dillon Mun. Corp., sections 23, 24, 25, give definitions substantially similar, and also classify school districts with counties, townships and other corporations of like kind. Some of these authors say that such corporations are usually formed or created by general laws, but this is not said to be universal or necessary, and on the question here discussed, the capacity to receive and exercise delegated powers of taxation, the essential feature is that they are, as stated, agencies of the State, incorporated to enable them to exercise certain governmental functions in designated portions of the State's territory. In accord with these text writers *Rhotrock, judge,* delivering the opinion of the court in *Currier v. District Township,* 62 Iowa, 102, says:

"The word municipal, as originally used in its strictness, applied to cities only, but the word now has a much more extended meaning, and when applied to corporations, the words 'political,' 'municipal,' and 'public' are used interchangeably."

This decision is an apposite authority on the case now being considered, and holds that under a statute authorizing municipal corporations to issue bonds, a school district is properly called a municipal corporation according to the modern use of the term, and as such, may obligate itself by bonds issued under such a statute. Our own Constitution evidently uses this term in the same sense, for in Article VII, being that headed "Municipal Corporations," are included counties, cities, townships, and in section 7 of the same article, restrictive of incurring debts, it is provided "That no county, city, town or other municipal corporation shall contract a debt;" clearly showing that, as used in that instrument, the broader definition is intended. That Mr. Cooley, in the clause cited by plaintiff, clearly intended the term in its more generally received acceptation, is, we think, made clear by the context; for on page 103 of same work, this author says, "Neither can the Legislature confer upon private corporations the power to tax, though it may doubtless create municipal corporations for that especial purpose when not forbidden by the State Constitution to do so." And in another work, Cooley on Constitutional Limitations, p. 264, the author says:

"It has already been seen that the Legislature cannot delegate its power to make laws; but fundamental as this maxim is, it is so qualified by the customs of our race and by other maxims which regard local government, that the right of the Legislature, in the entire absence of authorization or prohibition, to create towns and other inferior municipal organizations and to confer upon them the powers of local government, and especially of local taxation, and police regulation usual with such corporations, would always pass unchallenged."

This being the correct definition of municipal corporations as used in the connection stated, and school districts being properly included in the term, in the absence of some

restraint in the organic law, the great weight of authority is to the effect that the Legislature, as it has done in this instance, can create a specific school district within the precincts of a county, incorporate its controlling authorities, confer upon them certain governmental powers; and when accepted and sanctioned by a vote of the qualified electors within the prescribed territory, as required by our Constitution, Article 7, section 7, may delegate to such authorities power to levy a tax and issue bonds in furtherance of the corporate purpose. Thus, in American & English Enc. of Law, vol. 27, p. 906, it is said: "Districts for school, highway, levee, irrigation, drainage and other similar purposes may be, and often are, invested by the State with a corporate character and may be endowed with a taxing power. These are *quasi* corporations, mere subdivisions of the State for political purposes. ＊  ＊  ＊"

And further:

"As has already been shown, the establishment and maintenance of public schools is deemed to be a legitimate purpose of taxation; and since the State has power to levy school taxes, it can delegate such power to its subordinate political divisions. Usually the power is expressly conferred by the State on existing political divisions, or on districts constituted as corporations for school purposes."

In Desty on Taxation, vol. 1, p. 226, it is said:

"As distinct from its power of local assessment, the Legislature may create special taxing districts which may include one or more subdivisions of the State or parts of subdivisions. It is not essential that such districts shall correspond with the territorial limits of such subdivision. So it may create levee districts, school districts, swamp lands, road and highway and other special taxing districts."

And the weight of decided cases bear out these statements of the doctrine. *McCormac v. Commisisoners,* 90 N. C., 441; *Harriss v. Wright,* 121 N. C., 172; *State v. Sharp,*

125 N. C., 628; *Tate v. Commissioners,* 122 N. C., 812; *Gilkeson v. Frederick Justices* (Va.), 13 Grat., 577; *Kuhn v. Board of Education,* 4 W. Va., 499; *Smith v. Bohler,* 72 Ga., 546; *Landis v. Ashworth,* 57 N. J., 510; *Carson v. St. Francis Levee District,* 59 Ark., 513; *State v. Leffingwell,* 54 Mo., 458.

In *McCormac v. Commisisoners, supra,* Merrimon, J., for the court, said: "That it is within the power and is the province of the Legislature to subdivide the territory of the State and invest the inhabitants of such subdivisions with corporate functions, more or less extensive and varied in their character, for the purposes of government, is too well settled to admit of any serious question. Indeed, it seems to be a fundamental feature of our system of free government that such a power is inherent in the legislative branch of the government, limited and regulated, as it may be only by the organic law. The Constitution of the State was formed in view of this and like fundamental principles. They permeate its provisions, and all statutory enactments should be interpreted in the light of them, when they apply. It is in the exercise of such power that the Legislature alone can create, directly or indirectly, counties, townships, school districts, road districts and the like subdivisions, and invest them, and agencies in them, with powers corporate or otherwise in their nature, to effectuate the purposes of the government, whether these be local or general, or both. Such organizations are intended to be instrumentalities and agencies employed to aid in the administration of the government, and are always under the control of the power that created them, unless the same shall be restricted by some constitutional limitation. Hence, the Legislature may, from time to time, in its discretion, abolish them, or enlarge or diminish their boundaries, or increase, modify or abrogate their powers. It may provide that the agents and officers in them shall be elected by the electors, or it may appoint them

directly, or empower some agency to appoint them, unless in cases where the Constitution provides otherwise, and charge them with duties specific and mandatory, or general and discretionary in their character. Such power in the Legislature is general and comprehensive, and may be exercised in a great variety of ways to accomplish the ends of the government." In *Kuhn v. Board of Education,* it is held that "The Legislature has the exclusive power to create independent school districts without the assent of the citizens residing therein, and authorize by law the election of a board of education for such district by the qualified voters resident therein, and to give such board power to make the annual levies for buildings, and a board of schools therein."

And in *State v. Leffingwell, supra,* on the suggestion that these districts should be created by general laws, *Wagner, J.,* for the court, says:

"It may be urged that such subdivisions should be created by general laws without resort to special legislation. As a general rule this is true, but cases might arise where special acts might become absolutely necessary, such as the establishment of a new county or a new school district in some particular locality," etc.

It cannot be maintained for a moment that the corporate purpose and authority given to the board under the act in question are not governmental in their nature. The duty of providing for a system of education is enjoined upon the Legislature in most impressive terms by our Constitution, and is considered of such supreme importance as to require an independent and separate article in that instrument. As said by *Chief Justice Jackson,* in *Smith v. Bohler, supra:*

"We think it one of the most important of all the authorities of the county. Education is the cornerstone of a political fabric, especially when that fabric rests on the basis of popular suffrage. Neither roads, court houses, nor district subdivisions, or other arrangements for good government

are more vital to society. To regulate the instruction of the children who are soon to become the fathers and mothers of the land, is a great public trust, second to none confided to the people's agents, and those clothed with power to perform such a work in a county, constitute a great county authority, the very head of the list of the fiduciary agents of that county which confides such a trust to them."

There are decisions in other jurisdictions which appear to conflict, and some which do conflict with the position here maintained; but on examination they will, as a rule, be found to rest on a different principle from that involved by the facts of the case, or to be based on reasons or some special constitutional feature which do not exist with us. Thus in *Morgan v. Elizabeth,* 44 N. J., 573, it is said: "The power of the Legislature itself to erect a taxing district of lesser area than the district of which it is a part has been denied in a series of cases in this court." This statement of the doctrine, while sufficient perhaps for the purpose then made, on examination of the authorities cited to sustain it, will be found to. ·oad, and these authorities will require the qualification that such a district cannot be formed within an existing political division of the State in which taxes may be imposed, *without regard to special benefits,* unless such district is itself made a political division with appropriate powers of self-government." Accordingly we find that the New Jersey courts, as seen in *Landis v. Ashworth, supra,* uphold the taxing power of school districts, specially created, for the reason, no doubt, that there, as here, the tax is laid on a principle of uniformity, and for the benefit of all the inhabitants within the designated territory. It is imposed only by a vote of the people themselves and the authorities are given entire control over all matters pertaining to education within the specified district.

The Supreme Court of Alabama has also held that the power of taxation cannot be conferred on a school district,

*Schultes v. Eberly,* 82 Ala., 242, and that such districts are not included in the term "municipal corporations" as used in their Constitution.

This decision is rested in part on certain special features of the Alabama Constitution, but is made to depend chiefly on the ground that under the act creating these districts, the "cardinal principle of self-taxation" was ignored; and if these districts were allowed the power to tax, the limitations fixed by their Constitution on municipal taxation could be abated.

No such objection can be raised to the act now before us. The tax, as stated, can only be imposed, as required by our Constitution, by a vote of the people within the district, and there is no reason which occurs to us why the limitations on muncipal taxation provided in our Constitution do not apply. As we have shown, these school districts are public *quasi* corporations included in the term municipal corporations as used in Article VII, section 7, of our Constitution, and so come within the express provisions of section 7, that "No county, city, town or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, etc., nor shall any tax be levied but by a vote of the qualified voters."

And the principle of uniformity is established and required by section 9 of this article. Only counties, cities, towns and townships are mentioned in section 9 in terms, but the section is intended to, and does regulate the method of taxation and requires that all municipal taxation shall be uniform and *ad valorem.* The agencies are of secondary importance, and if the General Assembly, under the power conferred by section 14 of the article, change the agencies for levying these taxes the substituted authority would at once come within the regulation as to the method, and so we hold.

Again the Supreme Court of Tennesee, in *Waterhouse v.*

*Board of School Trustees,* 55 Tenn., 857, has held that the taxing power can only be delegated to counties and incorporated towns, and not to school districts. This decision is put on the ground that the Constitution of Tennessee in terms gives the General Assembly the power to authorize "counties and incorporated towns to impose" taxes without more and that the express delegation of this power in the cases specified, excludes its exercise in other cases. But no such limitation exists with us. Article VII of our Constitution which relates to the matter of municipal government, after providing for the officers, agents and boards which shall be ordinarily required as sufficient for the purpose, contains this provision, being section 14: "The General Assembly shall have full power by statute to modify, change or abrogate any and all of the provisions of this article and substitute others in their place, except sections 7, 9 and 13." Section 7, as stated, establishes a limitation on the power to contract debts, impose taxes, etc. Section 9 provides that taxation shall be imposed *ad valorem.* Section 13 prohibits the payment of debts contracted in aid of the Confederate Government. The language of section 14 is very broad in its scope and terms, and the Supreme Court in construing the section has decided that it is not necessary to effect changes in municipal government that an act for the purpose should be general in its operation or that it should, in terms, abrogate one article and substitute another in its stead, but that an act of the General Assembly making such change, and local in its operations, must be given effect under this amendment if otherwise valid. After declaring this as a principle of construction, the court, in *Harriss v. Wright,* 121 N. C., 179, further holds as follows: In 1875 a constitutional convention amended Article VII in these words: "The General Assembly shall have full power by statute to modify, change or abrogate any and all the provisions of this article and substitute others in their place

except sections 7, 9 and 13." Thus was placed at the will and discretion of the Assembly, the political branch of the State government, the election of court officers, the duty of county commissioners, the division of counties into districts, the corporate power of districts and townships, the election of township officers, 'the assessment of taxable property, the drawing of money from the county or township treasury, the entry of officers on duty, the appointment of justices of the peace and all charters, ordinances and provisions relating to municipal corporations.

Our Constitution, therefore, so far from restricting the power of the General Assembly on the matter now before us, has conferred upon that body full and ample power to establish any form of municipal government which the public interests and special needs of a given community may require. It is further urged that to establish such a district and confer powers of taxation within another political division which is also exercising the powers of local self-government, will tend to enhance expense, produce confusion and disorder and at times perhaps a conflict of authority. It does not appear what were the reasons which induced the inhabitants of this community to procure and adopt the scheme of education established by the act in question, but whether they were well considered or otherwise is of no moment, the question here is simply one of constitutional power. As said by *Nash, C. J.,* in *Taylor v. Commissioners,* 55 N. C., 144: "Whether the Legislature acted wrong or not is a question with which we have nothing to do. The power being admitted, its abuse cannot affect it. That is a matter for legislative consideration. It is sufficient that the judiciary claim to sit in judgment upon the constitutional power of the Legislature to act in a given case. It would be rank usurpation for us to inquire into the wisdom or propriety of the act." We are of the opinion that on reason and authority the act in question is a valid

exercise of legislative power, and on the facts found by the court below, there was error in the judgment pronounced by His Honor and the same must be reversed.

While this disposes of the case and determines all questions in which the plaintiffs have shown or claimed any interest, inasmuch as the judge declared that the defendants intend to disburse $2,500 of the $3,000 raised by the sale of bonds for the erection of a school building for the white race, we deem it not amiss to call the attention of the defendants to the decision of this court made at the last term in *Lowery v. School Trustees,* and reported in 140 N. C., 33, as affecting section 12 of the act. This section provides that the trustees shall dispose of the school funds to be realized under the act as to them may seem just. According to this well sustained opinion of *Mr. Justice Connor,* it is held to be the law that:

(a) The two essential principles underlying the establishment and maintenance of the public school system of this State are: First, the two races must be taught in separate schools, and second, there must be no discrimination for nor against either race. Keeping them in view, the matter of administration is left to the Legislature and the various officers, boards, etc., appointed for the purpose.

(b) In executing the law the defendant shall not discriminate against either race, but shall afford to each equal facilities. It is not intended by this that the taxes are to be apportioned between the races per capita, but that the school term shall be of the same length during the school year, and that a sufficient number of competent teachers shall be employed at such prices as the board may deem proper. *Dictum* in *Hooker v. Greenville,* 130 N. C., 473, disapproved.

(c) The act establishing a graded school for the town of Kernersville is construed to contain a positive direction to establish one school in which the children of each race are

to be taught in separate buildings and by separate teachers as the Constitution commands.

(d) The school district prescribed by the Act of 1905 (Pr. Laws, chapter 11,) must include both races, and the taxes levied and collected upon the property and polls of both races in the district must be applied to the support and maintenance of a graded school for the children of both races, and in carrying out the provisions of the act, the imperative mandate of the Constitution, that there shall be no discrimination in favor of, or to the prejudice of either race, must be observed.

And from this it follows that the discretion conferred upon the defendants by the terms of section 12 is by no means an arbitrary one; but the same must be used as directed and required by the Constitution and in the light of the above decision. There are no facts or data given by which the court may determine whether the contemplated expenditure is or is not an unequal and unlawful disbursement of the school funds. The defendants, in their sworn answer aver that they have no desire or intent but to administer their trust in accordance with the law of the land, and it is right that we should act upon this statement till the contrary is made to appear by proceedings duly entered.

This section as stated only relates to the disposition of the fund which is in no way involved in this suit. If defendants, contrary to their avowed purpose, shall endeavor to exercise the authority conferred upon them with an "evil eye and unequal hand" so as to practically make unjust discrimination between the races in the school facilities afforded, it is open to the parties who may be interested in the question, by proper action to correct the abuse and enforce compliance with the law.

Judgment Reversed.