JOHN R. PERRY ET AL. v. COMMISSIONERS OF FRANKLIN
COUNTY.

(Filed 21 October, 1908.)

1. Taxation—Poll Tax Increased Over $2—State and County Tax—
   Special Taxation.

   A special-school district created under Revisal, sec. 4115, may
   levy a tax on the poll, when submitted to and approved by the
   qualified voters thereof in an election duly held, in excess of $2,
   under the provisions of Article VII of the State Constitution.
   The equation between the property and poll tax established by
   Article V, sec. 1, and the restriction that the State and county
   tax combined shall never exceed $2 on the poll, applies only to
   State and county taxation, and not to municipal or *quasi* public
   corporations other than counties.

2. Same—Right to Vote.

   Article VI, sec. 4, of the Constitution, depriving a citizen of the
   right to vote unless he has paid his tax for the previous year,
   refers to the poll tax prescribed by Article V, sec. 1, to-wit, that
   for State and county purposes, and it can never exceed $2. This
   right of suffrage is therefore in no way affected by any increase
   of taxation imposed on these special-tax districts.

ACTION heard by *W. R. Allen, J.,* on return to a restrain-
ing order, at Louisburg, 22 August, 1908, from FRANKLIN.

From the facts stated in the complaint and admitted in the
answer it appears that, under the provisions of Revisal, sec.
4115, a special-school district was created in the township of
Louisburg, Franklin County, with power to levy a special tax
of 20 cents on the $100 worth of property and 60 cents on
each taxable poll, to supplement the public school fund ap-
portioned to such district, provided that such tax levy was
first submitted to the qualified voters within the boundaries
of said special-school district and approved by them in an
election held pursuant to law. Said proposition for a spe-
cial tax was ratified and approved by the majority of the
qualified voters of the district, and the tax levied by the
commissioners as provided by the law. The Board of Com-
missioners, on the first Monday in June, 1908, levied through-

out the county of Franklin a poll tax of $2 upon each taxable poll in said county for State and county purposes, and in addition to this the commissioners are proceeding to levy and collect from the taxpayers of said district the property tax of 20 cents on the $100 and 60 cents on the poll, making the entire poll tax levied on the taxable polls in said district $2.60. And the complaint charges that such levy, to the extent of this 60 cents, is unconstitutional and void, as being levied in violation of Article V, sec. 1, of the State Constitution.

The plaintiff John R. Perry, a resident and taxpayer of said district, and liable to payment of poll tax therein, in behalf of himself and other like taxpayers in said district, instituted this action to restrain the defendants from levying tax alleged to be illegal, on the ground indicated. On the hearing the restraining order was dissolved, and the plaintiffs excepted and appealed.

*William H. Ruffin* for plaintiffs.
*Bickett & White* and *Hayden Clement* for defendants.

HOKE, J., after stating the case: While the question presented in this appeal is one of commanding interest and far-reaching importance to the entire State, its correct solution, in our opinion, is readily deducible from decisions of this Court heretofore made and which bear upon the subject with more or less directness. Article V, sec. 1, of the Constitution, after directing that the General Assembly shall levy a capitation tax on every male inhabitant of the State over twenty-one and under fifty years of age, and that this poll tax on each shall be equal to the tax on property valued at $300, provides that the State and county capitation tax combined shall never exceed $2 on the head. Section 2 of the article provides that the State and county capitation tax shall be applied to the purposes of education and the support of the poor, and that not more than 25 per cent. of such tax in any

one year shall be appropriated to the support of the poor. Section 6 of the same article provides that the taxes levied by the Board of Commissioners for county purposes shall be levied in like manner as the State taxes, and shall never exceed the double of the State tax, except for a special purpose and with the special approval of the General Assembly. Construing these sections, the Supreme Court, at the last term, in *Railway v. Board of Commissioners of Mecklenburg County* and *Railway v. Board of Commissioners of Buncombe County,* held that this restriction on the amount of the poll tax contained in section 1 shall be given the significance which its terms clearly import—that the State and county capitation tax combined shall never exceed $2 on the head, and that this limit fixed on the poll tax for the purposes indicated—that is, for the State and county—shall be always observed, notwithstanding that a given tax may be for some special purpose and with the special approval of the General Assembly. And in *Wingate v. Parker,* 136 N. C., 369, this Court has held that the equation of taxation established by Article V, sec. 1, only applied to State and county taxation and did not extend to municipal corporations or public *quasi* corporations other than counties, but that in reference to these the regulations and restrictions in regard to taxation were contained in Article VII of the Constitution, supplemented by section 4 of Article VIII, a section which by inadvertence seems to have been given an improper placing in Article VIII instead of Article VII. In the opinion *Chief Justice Clark,* for the Court, speaking to the question, said: "It is clear that this section applies solely to State and county taxation. It requires (1) that the General Assembly shall levy a capitation tax on every male between twenty-one and fifty years of age; (2) that it shall be equal to the tax laid on $300 of property at cash valuation; (3) that the county commissioners may exempt from capitation tax, in special cases, on account of poverty and infirmity; and (4) that the State and county

capitation tax shall never exceed $2 on the head. If this section embraces municipal taxation, such taxation could very rarely be levied at all, for in most if not all the counties this limit has been reached."

The opinion further quotes with approval from that of *Merrimon, J.,* in *Jones v. Commissioners,* 107 N. C., 248, as follows: "In *Jones v. Commissioners,* 107 N. C., 248, *Merrimon, C. J.,* for a unanimous Court, holds that the equation prescribed by Article V, sec. 1, does not apply to municipal corporations. On page 258 he says: 'But it is settled by many decisions of this Court that it (Article. V, sec. 1) does not establish an exclusive system or scheme of taxation applicable and to be observed in all cases and for all purposes; that on the contrary it applies only to the revenue and taxation necessary for the ordinary purposes of the State and the several counties thereof. * * * The article does not provide or declare that the equation so established shall be of universal and exclusive application; it expressly mentions only the State and counties in connection with the subjects of revenue and taxation, and does not mention cities, towns and other municipal corporations, or make any reference thereto or provide for or as to them. * * * And it is singular that it fails to make some reference to municipal corporations in such respect if it was intended to embrace them. That it does not so intend is more manifest, in that they are expressly provided for in such respects in another distinct article of the Constitution. * * * Article VII of the Constitution is entitled "Municipal Corporations," and is exclusively devoted to that subject.' This article, in section 9, provides that 'All taxes levied by any city or town must be uniform and *ad valorem* upon all property in the same,' and nowhere is there any provision requiring the equation of taxation between property and polls to be observed. And in concluding the opinion he further says (on page 263): 'We are therefore of opinion that the equation and limitation of

taxation established by the Constitution (Art. V, sec. 1) applies only to taxes levied for the ordinary purposes of the State and counties.' And again (at bottom of page 264): 'We know that it has been said, *obiter,* in several cases, that the equation and limitation of taxation referred to above must be observed in levying taxes for municipal purposes, but it has not been so decided—certainly not expressly decided—nor can it be, in our judgment, without defeating the true intent reasonably appearing.' "

True, these decisions are directly on the question of the equation of taxation established by Article V, but every reason for the ruling on the question of the equation bears with full force on the subject of this restriction on the amount of the poll tax, with the additional and conclusive reason that such restriction in express terms is confined to the "State and county capitation tax." Again, in *Smith v. School Trustees,* 141 N. C., 143, this Court, after most careful consideration, decided as follows:

"2. Chapter 204, Private Acts 1905, creating a graded-school district and authorizing its trustees to levy a tax and issue bonds, when the act is approved by a majority of the qualified voters, is a valid exercise of legislative authority.

"3. The Legislature can create a specific school district within the precincts of a county, incorporate its controlling authorities, confer upon them certain governmental powers, and, when accepted and sanctioned by a vote of the qualified electors within the prescribed territory as required by our Constitution (Art. VII, sec. 7), may delegate to such authorities power to levy a tax and issue bonds in furtherance of the corporate purpose.

"4. School districts are public *quasi* corporations included in the term municipal corporations, as used in Article VII, sec. 7, of our Constitution, and so come within the express provisions of section 7, that 'No county, city, town or other municipal corporation shall contract any debt, pledge

its faith or loan its credit, etc.; nor shall any tax be levied, etc., unless by a vote of the majority of the qualified voters therein.' And the principle of uniformity is established and required by section 9 of this article."

In the case of *Smith v. Trustees, supra,* the taxing district was created by special act of the Legislature, and the officers of the *quasi* public corporation were given authority to levy and collect the special tax provided for, while in the present case the district was established, as stated, pursuant to the general law (Revisal, ch. 89, sec. 4115), and the taxes specified are to be collected by the Board of Commissioners. But the main purpose of the incorporation is the levying of a special tax, for a definite purpose, within certain restricted portions of a given county or township, and levying it only where sanctioned by a majority of the qualified voters of the district, and bringing such levy within the other provisions and restrictions of Article VII of the Constitution, that addressed more especially to municipal and other corporations of a *quasi* public nature, as contemplated by that article; and whether the collection of the tax was done by specified local agencies or by the general authorities of the county, this was only a ministerial matter, a question of method simply, which was not of the substance and should in no way affect the result.

From these authorities it is clear that the tax in question (the 60 cents in excess of the $2 already levied for State and county purposes) is not within the restriction of Article V, sec. 1, of the Constitution, but that the same is a tax imposed for a definite purpose by a special taxing district, coming as a public *quasi* corporation under the provisions of Article VII of the Constitution, and subject only to the limitations and restrictions contained in that article, notably in section 7, that no county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by officers of the same,

except for the necessary expenses thereof, unless by a vote
of the majority of the qualified voters therein; and of section
9, to the effect that all taxes levied shall be uniform and *ad
valorem*. In aid of the construction we place upon the pro-
vision of the Constitution bearing upon this question, good
reasons could be suggested for the distinction in the two classes
of taxation. Anticipating, as the result has proved, that the
general State and county taxation would very generally reach
the limit of $2, the framers of the Constitution did not deem
it well to place an arbitrary restriction on all local effort in
communities whose enterprise might suggest and financial
condition justify a greater amount of taxation than that al-
lowed by the general law. And it was no doubt further con-
sidered that the restriction contained in Section VII, for-
bidding the levy of any unusual tax, except when sanctioned
by a majority of the qualified voters of a given district, would
operate as a wholesome check against excessive taxation or
extravagant expenditure. Certain it is that, with the ex-
ception of the restraints indicated, the matter is not further
affected by the Constitution, but is referred entirely to the
legislative will. As to taxation within these special districts,
it is theirs to observe or disregard the equation established by
Article V in reference to State and county taxes, and to ex-
ceed or abide by the limit established in said article in refer-
ence to general taxation. And this is, no doubt, the reason
that the convention in framing the Constitution considered
it especially pertinent and desirable to insert section 4, Article
VIII, containing an admonition that the Legislature should
take special care to restrain these local taxing districts, cities,
towns and other municipal corporations from excessive levies
or extravagance and waste in municipal expenditure. To
establish such restraints as "will prevent abuses" in these mat-
ters is the language of the organic law.

It is suggested that the construction we give to the Constitu-
tion will in certain instances make it possible, by the levy

of an exorbitant poll tax, to deprive many citizens within a special district of the right to vote, and this by reason of the provision of the Constitution, "That no person shall be allowed to vote unless he shall have paid his poll tax for the previous year." But not so. The language of Article VI, section 4, of the Constitution, being the article relating to and regulating the right of suffrage, provides that no one shall be entitled to vote unless he has paid his poll tax for the previous year, "as prescribed by Article V, section 1, of the Constitution," thus providing that on payment of the poll tax allowed and established in Article V the right of suffrage in this respect is established, and this poll tax, as we have seen, can *never* exceed $2.

There is no error in dissolving the restraining order, and the judgment to that effect rendered below is

Affirmed.

CONNOR, J.; concurring: Appreciating the reasons upon which the well-considered opinion of *Mr. Justice Hoke* is based, I am constrained to concur in the conclusion reached. My investigation, however, in *Railroad v. Commissioners, ante,* 220, impressed upon my mind the conviction that the framers of the Constitution of 1868 did not anticipate that any poll tax should be levied for other than "State and county purposes," and for those it should not exceed $2, and should be applied only to the purpose of education and the support of the poor. I was strengthened in that opinion by the fact that an examination of the Constitution of every other State in the Union showed that no poll tax is levied except for those purposes. In a large majority of States the poll tax is limited to a certain sum, and in none can the limit fixed be exceeded. Unfortunately, the Convention of 1868 dealt with the subject of taxation in two separate and distinct articles of the Constitution, thus giving foundation for the construction now adopted, that the equation and limitation do not apply to municipal or *quasi* municipal corporations—

that they are subject to such poll taxation as the Legislature may see fit to impose. I do not think that the subject of poll tax for other than general taxation "for State and county purposes" was considered by the members of the Convention. No such tax has ever been levied other than by the State, and this was required "to be uniform throughout the State." Amendment 1835. The history of the struggle in this country between those who, with Judge Cooley, regard all poll taxation, except in a few cases, as both unjust and impolitic, and therefore not "of common resort in modern times," and those who have sought to impose upon the privilege of citizenship a tax, justifies the conclusion that, as in other States the poll tax was to be expressly limited both in respect to its amount and the purpose to which it should be applied. I cannot but think that the failure to do so is unfortunate. While I sympathize with the tendency in this State to encourage the spirit of local self-government by the establishment by legislation of special districts for the purpose of providing for and stimulating public schools, good roads and other matters of local interest, I regret to be compelled to leave the question of the amount of poll tax which may be levied open to the changes and chances of legislation and local elections. I fear that confusion and uncertainty will follow. If, by establishing these local divisions of our counties and townships, called, for want of a better term, *quasi* municipal corporations, the poll tax may be enlarged to any amount, is conceded, the constitutional restriction made for the protection of the wage earners may be largely legislated away. Professor Holland, in his work, "Studies of State Taxation," gives some valuable information and reflections on the subject of capitation taxation. He refers to the North Carolina system as "a dead weight which hangs so heavily over the small property owner." Of course, we have no other duty or power than to declare the law as the people in the exercise of their sovereignty have made it. Speaking, however, for myself alone, I cannot but regard the

148—34

conclusion to which we are brought as unfortunate.    The
amount of the tax upon the man, the citizen, should be fixed
by the Constitution, and not left open to legislative action or
local elections.    The extent to which the poll tax may be in-
creased through the medium of *quasi* municipal corporations
will be difficult to fix upon a substantial and satisfactory
basis.    Fortunately, in this case the tax goes to the support
of the public school, but there is nothing in the Constitution,
as we interpret it, by which such taxation may be confined to
this purpose.    I fear that a way has been opened by which the
question which should be removed from the domain of dis-
cussion and uncertainty will become a vexatious and disturb-
ing element of discord.    Like the right of suffrage, the capita-
tion tax should be disturbed only by the people, in the exercise
of their sovereign power, by amending their Constitution.